300 P.2d 588

Joan HIRSH and David Hirsh, Appellants,

v.

Helen I. MANLEY, Appellee.

No. 6074.

Supreme Court of Arizona.

July 16, 1956.

Rehearing Denied Sept. 25, 1956.

Darnell, Holesapple & Spaid, and Richard C. Briney, Tucson, for appellants.

Norman Herring, Tucson, for appellee.

LA PRADE, Chief Justice.

Plaintiff, Helen Manley, was injured as a result of a collision between her automobile and one being driven by defendant Joan Hirsh at the intersection of Plumer Avenue and Helen Street, in Tucson, Arizona. The vehicle driven by Joan Hirsh was owned by her father, defendant David Hirsh. From a judgment in favor of plaintiff and an order denying defendants' motion for a new trial defendants have appealed.

Considering the evidence below in support of the judgment in its most favorable light it appears that plaintiff was operating her car in an easterly direction on Helen Street while defendant Joan Hirsh was driving south on Plumer Avenue. As the two cars approached the intersection plaintiff was to the right of defendant. The day was fair and sunny. The exhibits and the testimony show that the northwest corner, i. e., the corner between the approaching cars was open and to approaching motorists an unobstructed view was presented. There were no traffic controls at the intersection.

Plaintiff testified that she was traveling at a speed between twenty and twenty-five miles per hour and was approximately seventy-five feet from the corner when she first saw the car of defendant; the Hirsh girl was driving about thirty-five miles per hour in plaintiff's opinion, and was about one hundred and ten feet from the intersection; plaintiff kept watching the other car and could see that Joan Hirsh and her companion were laughing and talking; plaintiff, realizing that Joan Hirsh had not yet seen her, "slammed on" her brakes. Testimony of a police officer who arrived at the scene of the accident after it had occurred estimated that plaintiff's car had skidded thirty-nine feet after the brakes were applied, ending up six feet past the western boundary of Plumer Avenue. An expert witness in connection with speeds as determined from skid marks stated that under the circumstances of this case a car such as plaintiff's would have skidded between thirty and forty feet at a speed of twenty-five miles per hour. This evidence was based on the premise that plaintiff's car had stopped prior to the collision. The police officers could not testify one way or the other as to that fact, but Mrs. Manley stated that she had brought her car to a complete stop just before Joan Hirsh ran into her. The aforementioned police officer testified that no skid marks were laid down by defendant's car.

Plaintiff, a fifty-two year old woman at the time of the accident, received bruises, abrasions and contusions requiring medical attention. For the greater part of the twenty-two months between the collision and the trial plaintiff was forced to sleep on a board and wear a surgical brace. She walked with a limp at the time of the trial. Plaintiff's testimony as to her

good physical condition and active life before the accident and the change for the worse thereafter was corroborated by several witnesses. At the trial plaintiff complained of pain in her left side, stating that she no longer could lift children and that as a result her "baby-sitting" jobs had been severely restricted. Plaintiff's doctor testified that in the first examination after the accident he found a large black and blue area over her left buttock, extending up the left side to the chest and left side of breast. Plaintiff complained of pain in her left shoulder, back and cervical spine. There were no broken bones. The doctor stated that it was possible that the pain might end within a year or last for the rest of her life. He said he thought any decrease in pain would be gradual in view of her prior condition of arthritis or neuritis.

The trial court submitted the issues of negligence, contributory negligence, and last clear chance to a jury, which found in favor of plaintiff and awarded damages in the sum of $11,250.

Defendants moved for a new trial on the grounds of excessive damages, that the verdict and judgment were not justified by the evidence and were contrary to law, and that the trial court had erred in giving certain instructions and refusing others. This motion was denied. The appeal before this court contains essentially seven assignments of error which fall into five separate categories.

Taking the question of liability first we are confronted with defendants' second and third assignments of error dealing with the doctrine of last clear chance as defined by the court. Defendants contend that the doctrine was inapplicable to the facts of the case and that the instruction should not have been given. The argument is also made that the instruction itself misstated the doctrine in failing to advise the jury of the need to find defendant Joan Hirsh guilty of subsequent negligence. Since the jury was presented with two possible situations in which defendants could have been found liable, negligence solely on the part of Joan Hirsh, or negligence on the part of plaintiff, plus subsequent negligence on the part of Joan Hirsh at a point in time when she still had the last clear opportunity to avoid the accident, it becomes necessary to see if the doctrine of last clear chance was applicable, and if so, whether the instruction correctly stated the law. The doctrine of last clear chance as defined in the Restatement, Torts, Section 479, has been quoted with approval by this court on more than one occasion, Casey v. Marshall, 1946, 64 Ariz. 232, 168 P.2d 240; Trauscht v. Lamb, 1954, 77 Ariz. 276, 270 P.2d 1071; and, briefly stated, this doctrine permits a plaintiff to recover, even though negligent, if he finds himself in a situation where he is.

unable to avoid the accident, and the defendant knows of plaintiff's plight or would have discovered it if he had exercised the proper vigilance toward plaintiff, and thereafter fails to take the necessary steps to avoid harming the plaintiff. In general, the courts do not find the enunciation of this doctrine difficult, but unfortunately this cannot be said of its application. The biggest problem for both the trial and appellate courts necessarily arises in attempting to determine whether the negligent acts of both parties concur as proximate cause. If so, then clearly defendant cannot be guilty of having had the last clear opportunity to avoid the accident. On the other hand if plaintiff's negligence has placed him in a position from which he no longer can extricate himself and defendant knows or should have known this fact and still fails to avail himself of that last clear chance available to him to avoid the accident, then obviously he is liable under the doctrine. What do the facts before us, construed favorably to plaintiff, show? First, that plaintiff first sighted defendant when the cars were seventy-five and one hundred ten feet, respectively, from the corner; second, that if plaintiff saw defendant then obviously defendant could have and should have seen plaintiff; third, that under the law of Arizona, when two vehicles are approaching an intersection from different streets at approximately the same time, the car on the left must yield the right of way to the car on the right, Section 66–164f, 1952 Cum.Supp., A.C.A.1939 [A.R.S. § 28–771]; fourth, that when the two cars first came within sight of each other they were approaching the corner at approximately the same time and, therefore, it was defendant's statutory duty to yield to plaintiff; that plaintiff watched defendant momentarily to see if defendant was going to slow down or stop so that plaintiff could go through; that plaintiff, seeing defendant take no such action, "slammed on" the brakes and skidded thirty-nine feet into the intersection; that defendant's car left no skid marks whatsoever, indicating that she never applied the brakes with any force; that defendant's car struck plaintiff's twenty feet south of the northerly line of Helen Street at a point six feet east of the westerly line of Plumer Avenue; and that it could reasonably have been inferred by the jury that plaintiff's car would have reached the intersection before defendant's car had plaintiff not applied her brakes as vigorously as she did. The jury could well have inferred that if Joan Hirsh had been attentive to her driving, she would have seen plaintiff, after plaintiff negligently got into a position of peril from which she could not extricate herself, in time to have thereafter by the exercise of reasonable care avoided the accident.

Defendants argue that the question of Joan Hirsh's subsequent negligence was not submitted to the jury, but we cannot agree

with this contention. Although the instruction covering the last clear chance doctrine was not artfully drawn it fairly states the law and the jury was apprised of the elements necessary to find that Joan Hirsh had had the last clear chance to avoid the accident.

Defendants' fifth assignment of error refers to the failure of the court to give defendants' Instruction No. 15 which would have advised the jury that it could not award any damages for plaintiff's pre-existing conditions of "obesity, menopause and/or poor posture". The trial judge refused this instruction on the ground that there was no evidence of any trouble from such conditions prior to the injuries. They were mentioned by plaintiff's doctor only insofar as they have hampered her recovery from the injuries. These conditions were only important from the standpoint of possible aggravation. The part of the instruction referred to above dealt with something entirely outside the scope of the evidence and the trial court properly refused to so instruct the jury.

In assignment of error No. 6 defendants attack two of the trial judge's rulings in which he refused to admit certain evidence for impeachment purposes. The proffered evidence consisted of defendants' Exhibits 1 and 5, for identification, and were, respectively, the notes of the officer who investigated the collision, and the po-

lice accident report dated May 1, 1953, which was submitted by said officer to the Arizona Highway Department. Both exhibits were offered by defendants for only one purpose, namely, to impeach the testimony of officer Altenberger to the effect that he did not know whether Mrs. Manley's car had stopped at the moment of the collision. The proffered exhibits both state categorically that plaintiff's car struck defendant Joan Hirsh's car, but this was merely a conclusion of officer Altenberger, since he was not an eyewitness to the accident. No evidence was offered by either side in an attempt to qualify officer Altenberger as an expert, with the result that he was not competent to testify as to such matters. It follows that if said officer was not competent to testify as to matters requiring an expert's knowledge at the time of the trial his conclusions as to the very same matters were not competent when originally made. Consequently, such original statements could not be used to impeach his testimony at the trial when he stated he did not know whether the plaintiff's car had stopped before the collision.

In assignment of error No. 7, defendants argue that the trial court erred in permitting plaintiff's part time employer to testify as to the earning capacity of "baby-sitters" employed by her, on the grounds that such evidence was immaterial. It is defendants' contention that employment in the baby-sitting business is sub-

ject to so many variables, such as age of sitter, availability as to time (day, evening or overnight), as well as distance, etc., that it is impossible to generalize as to average earnings or earning capacity. Mrs. Manley did not testify that she had ever been available for full time employment as a sitter prior to the accident, nor did she so testify as to the future. Consequently, it is clear that the testimony of her employer as to the potential earning capacity of baby sitters in general was in no way relevant to plaintiff's particular situation. Therefore, although it was admissible when the employer testified, it should have been made subject to connection with relevant testimony by plaintiff, and in the absence of such testimony by plaintiff it should have been stricken. This error was prejudicial and due to the fact that there is no way for this court to determine to what extent the jury was influenced by such evidence, and since we cannot segregate the excess damages awarded to plaintiff, the remedy of remittitur is not available. Silver King of Arizona Mining Co. v. Kendall, 1921, 23 Ariz. 39, 201 P. 102; 5 C.J.S., Appeal and Error, § 1736, p. 1028. A new trial must be ordered.

■ Defendants argue in Assignments of Error 1 and 4 that the court erred in giving and refusing certain instructions concerning the measure of damages. The trial judge granted a modified version of plaintiff's Instruction No. 14, while refusing defendants' Instruction Nos. 10 and 13. Instruction No. 14 permitted the jury to award damages to Mrs. Manley for medical care, loss of earnings, permanency of injuries, and pain and suffering "reasonably certain" to occur in the future. Instruction No. 10 was the standard type of instruction covering damages and was aptly covered by plaintiff's Instruction No. 14. Instruction No. 13 was cautionary and merely attempted to instruct the jury not to award damages on the basis of mere possibility or probability. In view of plaintiff's Instruction No. 14 which used the words "reasonably certain" we do not find any error in refusing this instruction.

■ Defendants' primary contention here is not that plaintiff's Instruction No. 14 is bad in and of itself, but rather that it is not supported by the evidence. It is argued that where plaintiff allegedly suffers from an injury subjective in character, i. e., which cannot be corroborated by medical testimony, no damages can be awarded for future effects of the injury, such as medical care, loss of earnings, permanency of injury, and pain and suffering, since such damages would be too speculative. Defendants point out that this is well-settled law in the majority of jurisdictions in this country, Pine v. Rogers, 182 Okl. 276, 77 P.2d 542, 115 A.L.R. 1146, 1149, and has been held to be the law in Arizona as well. Consolidated Arizona Smelting Co. v. Egich, 1920, 22 Ariz. 543, 199 P. 132.

But plaintiff responds by citing City of Phoenix v. Mullen, 1946, 65 Ariz. 83, 174 P.2d 422, 425, wherein this court held that medical testimony is not required to prove the permanency of subjective injuries "if there is controverting evidence or testimony from which it may be inferred that the injury is in fact permanent". In that case the plaintiff suffered a contusion and cut on his head in addition to bruises on his hip. Subsequently, he complained of severe pains in his back and stopped working as a janitor for about two months. During this time he received medical treatment. At the trial, only five months after the accident, plaintiff, who was fifty-six years old, testified as to continued back pains and added that he could do all types of heavy work required of him as a janitor before the accident, but afterwards he could not do any heavy lifting. According to medical proof submitted by defendants, plaintiff's injuries were not permanent and X-rays were negative. Although the proof of plaintiff's injuries was limited to that above plus the admission by defendants' doctor that the pains complained of by plaintiff might have been the result of the injuries received, the court held such sufficient to go to the jury as to the permanency of plaintiff's injuries. In support of this proposition the following cases were cited: Bach v. C. Swanston & Son, 1930, 105 Cal.App. 72, 286 P. 1097, 1100; Hecker v. Union Cab Co., 1930, 134 Or. 385, 293 P. 726. In the Bach case the only medical witness testified that the plaintiff's injuries would not be permanent, while the plaintiff stated that he could no longer do heavy lifting and was nervous and subject to dizzy spells. The California court held that the testimony of plaintiff was sufficient for the jury to infer "that the effect of the injury was of a continuing and permanent nature." The Oregon Supreme Court in the Hecker case, also faced with subjective complaints and the absence of corroborative medical testimony as to the permanency of the injuries and the probability of future pain and suffering, concluded that nevertheless the facts justified the presentation of such questions to the jury.

In the very recent case of Henderson v. Breesman, 1954, 77 Ariz. 256, 269 P.2d 1059, we cited the Mullen case with approval, reaffirming the proposition that in certain situations the nature of the injuries may warrant an instruction as to their being permanent even in the absence of medical proof. This statement was made with reference to an eye injury and headaches, and was entirely consistent with the further conclusion that there was no evidence sufficient to permit the jury to consider future medical expenses or permanent impairment of earning capacity. Obviously an injury can be permanent and yet not affect future earning capacity one bit or require further medical care.

█ At the time of the trial in the case at bar, some twenty-two months after

the accident occurred, plaintiff testified she still suffered from backaches and limped, that her physical condition had been good prior to the accident, and that her livelihood as a baby-sitter had been adversely affected due to her inability to lift children or to accept overnight work. Her doctor said her pain might last for the rest of her life or end in a year, but pointed out that any decrease in pain would be gradual due to previous ailments. Friends and associates confirmed plaintiff's testimony as to the marked change in physical condition they had observed since the injuries were inflicted. In addition, the uncontroverted evidence shows that plaintiff had been for about a year and was still at the time of the trial wearing a surgical brace, sleeping on a board and suffering pain and physical discomfort. From this testimony, it is obvious that future pain and suffering as well could be inferred by the jury. We believe that as far as permanency of injuries and future pain and suffering are concerned this case is controlled by the Mullen case, supra, and therefore, that limited to these two items the instruction in question was proper. See, also, Alamo v. Del Rosario, 1938, 69 App.D.C. 47, 98 F.2d 328 and Palmer v. Lasswell, Mo.App.1954, 267 S.W. 2d 492, for excellent discussions of this problem. However, the question of future medical expenses is in a different category. Plaintiff's doctor testified that while plaintiff's condition lasted she could be expected to seek medical help to alleviate her pain. Such care would cost about $5 a treatment, but no evidence was offered as to how many treatments might reasonably be required nor for how long such care would probably be necessary. This evidence was too indefinite to support an award of damages, and as a result it was error for the trial court to include future medical expenses in Instruction 14. Henderson v. Breesman, supra. Finally, no competent evidence can be found in the record upon which an award of future loss of earnings can be predicated. Plaintiff's part time employer for whom she had worked only five months prior to the accident presented figures showing a monthly average income of less than $35. Plaintiff herself could not give any figures to show how much she had earned prior to going to work for Mrs. Jones, or how much she had earned from free-lance baby-sitting during the five months Mrs. Jones employed her before the accident. Mrs. Manley did not work at all for four months following the collision, but then went back to work for Mrs. Jones. From September 1, 1953 to June 30, 1954, she averaged about $15 a month. But from July 1, 1954 to January 31, 1955, a period of seven months, her average earnings were in the neighborhood of slightly more than $50 per month. In the absence of more definite proof as to past earnings it was error to let the jury speculate as to possible loss of future earnings.

As mentioned above, no remittitur is possible in this situation so a new trial must be granted. However, since the questions of liability and damages are clearly separable issues we remand this cause to the trial court for a new trial limited to the question of damages only. Rule 59(h), Rules of Civil Procedure; Palmer v. Kelly, 1938, 52 Ariz. 98, 79 P.2d 344; Atchison, T. & S. F. Ry. Co. v. Gutierrez, 1926, 30 Ariz. 491, 249 P. 66.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.