324 P.2d 220

Mrs. Mary GRAY, surviving wife of Paul Gray, Appellant,

v.

William Lytle WOODS and Whiting Brothers Land and Timber Company, a corporation, and Whiting Brothers Lumber Yards, Inc., a corporation, Appellees.

No. 6272.

Supreme Court of Arizona.

April 16, 1958.

Rehearing Denied July 1, 1958.

Rawlins, Davis, Christy, Kleinman & Burrus and Chester J. Peterson, Phoenix, for appellant.

Fennemore, Craig, Allen & McClennen, Kenneth L. Abrams and Calvin H. Udall, Phoenix, for appellees.

90

JOHNSON, Justice.

Mary Gray (plaintiff-appellant), surviving wife of Paul Gray, commenced the action against Whiting Brothers Land and Timber Company, a corporation, and its driver, William Lytle Woods (defendants-appellees), for damages resulting from the death of her husband. The cause was tried before a jury which returned a verdict in favor of the defendants, and judgment having been entered in favor of defendants, and after the denial of the motion for a new trial, this appeal follows.

The accident happened at approximately 10:30 p. m., at which time the defendant William Lytle Woods was driving a semi-truck and trailer loaded with lumber on Highway 60, heading southwest from Show Low toward Globe, Arizona, and while driving at a speed of approximately thirty-eight miles per hour, at a point about midway of a one and one-half mile incline into an arroyo known as Seven-Mile Wash, ran into a Studebaker sedan owned and being operated by I. W. Riddle, in which the plaintiff's husband was riding as a passenger. As a result of the collision both men were killed.

When the driver of the lumber truck started down the incline he noted a car, later shown to have been driven by a Mr. Holley, to his rear, and assuming the car desired to pass Woods then dimmed his lights as a sign that the road was clear for passing and moved to the right-hand side of the road. When the rear car driver changed his mind and did not pass Woods, looked in his rear view mirror, continued down the road, and ran into the Riddle car which was crosswise in the road directly in his lane of traffic. The truck driver had continued with his lights on dim and did not see the Riddle car until he was "practically on him". The headlights of the car were not on until the instant of the impact, and were still on when the car came to rest in the canyon. A Greyhound bus had passed Holley and the lumber truck approximately three to five miles or minutes prior to the point of impact, and at the point of impact this driver later testified he had noticed a dark car which he almost struck; that it was pointed toward Show Low and was partially over the center line; and that the lights were not on but the car was stopped and two men were looking under the hood.

The truck driver testified that his truck, with its lights on dim, had a beam which he estimated would shine approximately 175 feet in front of his truck, and on bright they would shine for more than 1,000 feet. There was evidence that the road down this incline was straight and unobscured for 540 feet prior to the point of impact.

The lumber truck struck the two-door Studebaker sedan broadside at a point near the left-hand door, and carried it down the

road some distance and then off into a canyon where both vehicles came to rest.

Plaintiff assigns as error the action of the trial court in permitting a highway patrolman to testify and give his opinion on the question of the point of impact on the highway and the point of impact of the two vehicles, for the reasons that (1) such opinion was on matters of common knowledge and experience, and (2) that it was based on facts and investigations outside the evidence presented at the trial and was not based on a hypothetical question framed from the facts presented during the trial.

The highway patrolman testified on behalf of the appellees that he had been in the service of the patrol for two years and that prior thereto he had completed the course of study of the highway patrol academy, which includes accident investigations, and was then assigned with a senior patrolman for additional training. Also, that during his duty as a patrolman he had investigated many accidents. This court has held that the question of the competency of an expert witness is a matter resting in the sound discretion of the trial court, and its exercise will not be reviewed but for abuse. Arizona Superior Mining Co. v. Anderson, 33 Ariz. 64, 262 P. 489.

The patrolman then testified that as a result of his investigation he found dirt and debris on the highway and gouge marks in the pavement left by one of the wheels of the Studebaker, and based upon his previous experience and training and the above evidence at the scene of the collision it was his opinion that the point of impact was approximately four feet north of the center line of the highway and in the lane for Globe-bound traffic. He further testified that upon examining the Studebaker car he found an impression on the left door made by a large rivet on the front bumper of the lumber truck. There is no evidence in the record to indicate that his opinion as to the point of impact was in any manner based on information told to him in the course of his investigation. It is limited to the physical evidence found on the highway at the scene of the accident. Thus, from the record, there is no merit to the contention that it was based on hearsay evidence, and the trial court properly admitted such evidence.

It is now generally recognized that a highway patrolman or other officer, when shown to have proper training and experience in the investigation of traffic accidents, testifying as an expert witness, may properly give an opinion as to the point of impact in a traffic accident where his opinion is based on marks on the highway, damage to the vehicles involved, and the location of debris on the highway or other indicia at the scene, but not when such opinion is founded on statements made to him by other persons. Grant v. Clarke, 78 Idaho

412, 305 P.2d 752; Wells Truckways, Ltd. v. Cebrian, 122 Cal.App.2d 666, 265 P.2d 557; Kalfus v. Fraze, 136 Cal.App.2d 415, 288 P.2d 967; People v. Haeussler, 41 Cal. 2d 252, 260 P.2d 8; Nielsen v. Wessels, 247 Iowa 213, 73 N.W.2d 83; Tuck v. Buller, Okl., 311 P.2d 212.

The trial court properly instructed the jury of the material portions of § 66–174m, 1952 Cum.Supp., A.C.A.1939 (now A.R.S. § 28–942), which read as follows:

"I instruct you that the law of the State of Arizona requires that whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto at any time from a half-hour after sunset to a half-hour before sunrise, the driver shall use a disposition of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles for a safe distance in advance of the vehicle."

■ Appellant contends that because the defendant had an unobstructed view of 540 feet prior to the point of collision, and kept his lights on low beam, which had a perimeter of only 175 feet, instead of on high beam which would have enabled him to see for a distance of more than 1,000 feet, that he violated the positive directions of § 66–174m, supra, and that failure of the court to instruct the jury that such violation was negligence per se constituted reversible error. The contention that driving with low beam lights with a perimeter of 175 feet is as a matter of law a violation of this section, is not sound. One does not necessarily violate the statute when his lights reveal persons and vehicles only 175 feet in advance of the operator. Before there is such a violation an additional fact must be found to exist; to wit, that such distance was unsafe. Under some conditions it might be safe and in compliance with the statute, whereas under other conditions it might be unsafe and offend the statute.

■■ We are committed to the doctrine that the failure of the driver of the vehicle to comply with the positive directions of the statute relating to the operation of motor vehicles is negligence per se, and if such failure is the proximate cause of an injury to another it is actionable negligence. City of Phoenix v. Mullen, 65 Ariz. 83, 174 P.2d 422; Anderson v. Morgan, 73 Ariz. 344, 241 P.2d 786, and cases cited therein. We are, therefore, of the view that had appellant made proper request for an instruction to the effect that if the jury found in fact that defendant's lights were not high enough and of sufficient intensity to reveal persons and vehicles at a safe distance as required by the statute, such conduct would be negligence per se, the instruction would be proper. The instruction requested on this subject was that if defendant violated any possible statute

he would be guilty of negligence per se without any particular reference to the statute involved.

Plaintiff also assigns as error the refusal of the trial court to give her instruction No. 9 on the doctrine of the last clear chance. The trial court, after properly instructing the jury on contributory negligence, gave the following instruction on the last clear chance doctrine:

"But there is one more thing to be considered if you come to that point, because the law is that even though Paul Gray may have been guilty of negligence which contributed to the accident and the injuries by putting himself in a position of peril; yet, if thereafter the defendant, *seeing the position in which he was,* had an opportunity by the exercise of reasonable care and prudence to save himself from the consequences of his negligence, it was his duty to do so; and if he failed to do so, and that was the immediate proximate cause of the death of Paul Gray, he may still recover. That is what is called the last clear chance." (Emphasis supplied.)

It is the position of plaintiff that the instruction should not have been limited to a situation where the defendant "seeing the position in which plaintiff was" thereafter was negligent.

We do not believe the instruction given by the trial court set forth above *is a correct statement of law under the* evidence of this case and was prejudicial to plaintiff. The instruction assumes that the driver of the lumber truck saw the position in which the decedent was at the time of impact, which is in direct conflict with the facts and does not contain all of the essential elements of the doctrine of last clear chance.

We have clearly announced that the doctrine of last clear chance, as set forth in the Restatement of the Law, Torts, § 479, applies in this jurisdiction; and that unless each element of the doctrine as set forth in that text is supported by evidence actually adduced, or to reasonable inferences to such evidence, the jury should not be instructed on the doctrine. Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071; Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240; Pacific Greyhound Lines v. Uptain, 81 Ariz. 359, 306 P.2d 281; Hirsh v. Manley, 81 Ariz. 94, 300 P.2d 588.

The jury should have been instructed that if the decedent's negligence placed him in a position from which he no longer could extricate himself, and defendant knows or *by the exercise of reasonable care should have known* this fact and still fails to avail himself of that last clear chance to avoid the accident, then he is liable under the doctrine. Casey v. Marshall, supra.

94

We are of the opinion, after a careful examination of all the evidence in this case, that an instruction on the doctrine of last clear chance was warranted. We have examined plaintiff's requested instruction No. 9, and find that it is a proper instruction under our pronouncement in Trauscht v. Lamb, supra, and Hirsh v. Manley, supra, and should have been given.

The plaintiff further contends that the trial court committed prejudicial error in giving an instruction on unavoidable accident for the reason that the facts clearly indicate that the accident was proximately caused by negligence in that the driver of the lumber truck was driving with his lights on dim and failing to keep a proper lookout at the time of the collision.

We have defined the term "unavoidable accident" as such an occurrence as under all the circumstances could not have been foreseen, anticipated or avoided in the exercise of ordinary care. Town & Country Securities Co. v. Place, 79 Ariz. 122, 285 P.2d 165. The term is also defined in 65 C.J.S. Negligence § 21, as follows:

"* * * An unavoidable accident is one which occurs while all persons concerned are exercising ordinary care, that is, one not caused by the fault of any of the persons; if the accident producing the injury could have been prevented by either person by means suggested by common prudence it is not deemed unavoidable. * * *"

We find no evidence in this case tending to show that the death of Paul Gray resulted from any cause other than negligence on the part of someone; and where the accident could not have happened without negligence or contributory negligence it is not an unavoidable accident.

Therefore, we hold that the issue of unavoidable accident was not present, and that the giving of such an instruction in the absence of evidence raising a genuine issue upon that question is reversible error. McBride v. Woods, 124 Colo. 384, 238 P.2d 183, 29 A.L.R.2d 101; Brewer v. Berner, 15 Wash.2d 644, 131 P.2d 940; Schmid v. Eslick, 181 Kan. 997, 317 P.2d 459; Tyree v. Dunn, Okl., 315 P.2d 782; 38 Am.Jur., Negligence, § 364, p. 1078. We cannot presume that the jury disregarded the instruction which incorrectly left them at liberty to return a verdict upon a finding of unavoidable accident.

We find no merit to the other assignments of error.

Judgment reversed and remanded for new trial.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.