405 P.2d 301

**CITY OF PHOENIX, a municipal corporation and Edward Arthur Barick, Appellants,**

v.

**Philip G. SCHROEDER and Timothy J. Martin, Appellees.***

**No. I CA–CIV 74.**

Court of Appeals of Arizona.

Sept. 3, 1965.

Rehearing Denied Sept. 28, 1965.

Review Denied Oct. 26, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8044. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

Kramer, Roche, Burch & Streich, by Dan Cracchiolo and Mark I. Harrison, Phoenix, for appellants.

Langerman & Begam, by Robert G. Begam, Phoenix, for appellees.

CAMERON, Judge.

This is an appeal from a jury verdict in favor of plaintiffs for personal injury suffered by them as a result of a truck accident in the City of Phoenix, Arizona, in 1961.

The facts of the case as they pertain to the appeal are as follows: At approximately nine o'clock in the evening of August the 8th, 1961, the defendant, Edward Arthur Barick, a street maintenance employee for the City of Phoenix, received a call that a tree had blown down in the area of Southern Avenue and 42nd Street in the City of Phoenix, and was obstructing traffic. Equipped with a city owned boom truck, used to lift and haul heavy objects, the defendant, Barick, proceeded to the area accompanied by another city employee, Vernon Hunsaker, who drove a smaller pick-up truck.

When the two men arrived at the scene, they found that a large cottonwood tree had fallen across Southern Avenue at 42nd Street, completely obstructing both east and west bound traffic on Southern Avenue. At this point Southern Avenue is heavily traveled, being one of the main east-west streets in the City of Phoenix. By proceeding partially over the fallen tree and partially over the extreme north shoulder of Southern Avenue, Barick was able to position his boom truck just east of the tree, and in the middle of the street. Immediately setting to work, the defendant Barick, with the aid of Hunsaker, lifted

the tree from the roadway and partially onto the boom truck, whereupon defendant pulled his truck forward in order to clear the spot where the tree had lain so that he and Hunsaker could sweep the remaining branches, leaves and other debris off Southern Avenue.

At this point, the position of the boom truck was one of slight angle to the south of the middle of the road, but still extending over the center and into the lane of west bound traffic. From the evidence it appears that no lights were lit on the boom truck with the exception of its two front headlights. On the other hand, Hunsaker, who had positioned his pick-up truck behind and to the southwest of the fallen tree, had turned on his flashing red and yellow emergency lights. These lights, however, though plainly visible to east bound traffic, were obscured from the vision of west bound travelers by the fallen tree's foliage and the position of the boom truck in front of it.

In the meantime, the plaintiffs, Philip G. Schroeder and Timothy J. Martin, were west bound along Southern Avenue in a pick-up truck after returning to Phoenix from near Snowflake, Arizona, where they had been working on a construction job. A few moments later, plaintiffs' truck collided with and side-swiped the defendant's boom truck, flipped over and came to rest on the north side of the road. Only slight injuries and bruised ribs were suffered by the plaintiff Martin. The plaintiff Schroeder suffered severe injuries to his left arm, ultimately requiring surgery to remove it above the elbow.

In December, 1961, suit was brought against both Barick and the City of Phoenix, alleging negligence in that the defendants failed to keep a proper lookout for other vehicles using the highway and failed to use adequate warning signals indicating that a vehicle was stopped on the highway at night.

Defendants answered, denying various allegations of plaintiffs' complaint, and affirmatively pleading that plaintiffs were contributorily negligent. Trial was held before a jury and judgment rendered in favor of plaintiff Martin for $2,500 and plaintiff Schroeder for $95,925.00. Defendants appealed making several assignments of error.

First, defendants contend that the trial court committed reversible error in failing to grant defendant's motion for directed verdict or for judgment n. o. v. because, as a matter of law, plaintiff Schroeder's conduct was the sole proximate cause of the accident.

■ While we can agree that where defendants are not negligent, they should bear no liability, such is not the case here. The testimony is ample from which a jury might find negligence on the part of the defendants. Defendants parked a large truck with a crane-like boom on a dark highway with its headlights shining in the direction of oncoming west bound traffic. They parked the truck in the middle of the road and although there was sufficient testimony to explain why the defendant felt required to park the truck in the middle of the highway initially, at no time during the trial were defendants able to explain why they did not remove the truck from its potentially dangerous position once the tree was secured and moored to the truck. Further, defendants failed to set flares or other warning devices to apprise the plaintiffs and other motorists that a potentially dangerous condition existed. The evidence is ample from which the jury might well find that the actions of the defendants were negligent and a proximate cause of the accident and injuries of the plaintiffs.

■ Nor do we believe that the evidence establishes as a matter of law that the plaintiff Schroeder's conduct was the sole, proximate cause of the accident and injuries. Assuming, arguendo, that the plaintiff Schroeder was negligent, under the facts of this case his negligence would be contributory negligence and a fact question for the jury and not a question of law

**514**

for this Court or the lower court to decide. Article 18, Section 5, Arizona Constitution, A.R.S.; Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962), Campbell v. English, 56 Ariz. 549, 110 P.2d 219 (1941).

██ Defendants also contend that Sections 28–960, 961, A.R.S., which provide that trucks and other vehicles must carry flares and other warning devices and display them when disabled "outside the corporate limits of municipalities", relieves the appellants from carrying and displaying proper warning devices while within the city limits. Again we cannot agree. In the first instance, appellant's truck was not disabled and therefore does not fall within the provisions of Section 28–961, A.R.S. Finn v. J. H. Rose Truck Lines, 1 Ariz. App. 27, 398 P.2d 935 (1965). However, even if the appellants were within the provisions of this statute, we do not see how that could relieve appellants from the duty of proper and reasonable care in providing warning devices for the protection of the plaintiff and other members of the public. The appellants had a duty to act reasonably under the circumstances and to avoid creating an added and unreasonable risk over and above the one which already existed by reason of the fallen tree.

Defendants' second assignment of error concerns the introduction of expert testimony. At the trial, plaintiffs introduced an expert witness, Mr. Ralph Snyder. Mr. Snyder, at the time of the trial, had been engaged in the field of accident investigation for over 28 years. He had served as Assistant State Safety Consultant for the Federal Works Administration, Safety Director of Ground Traffic for Tinker Air Force Base, Safety Engineer for the City Bus Company of Oklahoma City, and for 15 years prior to the trial had been engaged in professional driver testing and training. In the course of this work, he had examined and tested over 15,000 drivers. In addition, Mr. Snyder operated an Accident Analysis Laboratory containing specialized equipment for the analysis of automobile accidents. He was a member of various professional organizations and societies and the author of two texts in his field. He had lectured extensively on the subject of accident analysis. There is no doubt that the recital of his experience in the field of accident analysis was impressive.

██ Generally, the competency of an expert witness is a matter resting in the sound discretion of the trial court and will not be reviewed except for a clear abuse of that discretion. Gray v. Woods, 84 Ariz. 87, 324 P.2d 220 (1958). We do not find any such abuse of discretion in allowing Mr. Snyder to testify as an expert in his particular field.

Mr. Snyder reconstructed the collision and testified as to his opinion and conclusions about the point of impact and the speed of plaintiffs' automobile immediately prior to the impact, as well as other matters concerning the accident. Mr. Snyder was also able to testify concerning the point of impact of the automobile involved in the second accident which occurred some 15 minutes after the first accident. His testimony from photographs taken at the scene of the accident after the second accident appeared to be most helpful in assisting the jury to determine where plaintiff Schroeder's truck had hit the boom truck and where the second car had hit the same truck almost immediately thereafter.

Defendants contend most strenuously that there is enough evidence and sufficient witnesses from which the jury might well have found these facts upon their own, and that to allow the expert to testify concerning these same facts invades the province of the jury and shifts the responsibility for determining the ultimate facts of the case from the jury to the experts. Defendants contend this creates a trial by experts rather than trial by jury.

██ There is respectable authority for the view that a skilled or expert witness may not testify as to his opinion upon the ultimate facts in issue before the jury, and that to do so is to invade the province

of the jury. Dobbertin v. Johnson, 95 Ariz. 356, 390 P.2d 849 (1964). A number of courts therefore have held that skilled or expert opinion evidence is not admissible as to such things as point of impact or collision in motor vehicle accidents. (See 66 A.L.R.2d, page 1095). And, clearly, an expert should not be permitted to express his opinion in a matter on which the opinion cannot aid the trier of fact in determining the truth of the fact. If the jury is as competent to determine the fact in issue as the expert, ordinarily the expert's opinion will be of no assistance and should not be admitted. Beckman v. Schroeder, 224 Minn. 370, 28 N.W.2d 629 (1947). Where, however, the qualifications of the expert witness are such that his knowledge of the matter in relation to which his opinion is sought will probably aid the trier of fact (the jury) in determining the truth, then that testimony may be admitted, and the trend of the authority appears to be that because the expert opinion bears directly on the issue to be determined by the jury does not render it in itself inadmissible:

"It is now generally recognized that a highway patrolman or other officer, when shown to have proper training and experience in the investigation of traffic accidents, testifying as an expert witness, may properly give an opinion as to the point of impact in a traffic accident where his opinion is based on marks on the highway, * * * or other indicia at the scene, but not when such opinion is founded on statements made to him by other persons." Gray v. Woods, 84 Ariz. 87, at 91, 324 P.2d 220, at 223 (1958).

And:

"It is seldom that there is any real issue in regard to the point at which two vehicles collide. When, however, that point is in issue, as in the instant case, any testimony given by the investigator, unless he was a witness to the accident, is necessarily based upon an opinion and a conclusion, which of course, as contended by defendant, is

generally a question for the jury. An exception to that rule is expert opinion, which, if admissible, may be considered by the jury in their deliberation for what it is worth." Tuck v. Buller, Okl., 311 P.2d 212, at 214, 66 A.L.R.2d 1043, 1047 (1957).

Inasmuch as there was a second accident within 15 minutes after the first accident, and there was some confusion among the witnesses as to exactly what happened, we think that the trial court did not err in admitting the testimony and opinions of Mr. Snyder in order to properly aid and assist the jury in arriving at a decision in this case.

■ Defendants further object to the testimony of Mr. Snyder because his opinions were not based upon an inspection of the accident scene or the vehicles involved, but was based entirely on police photographs taken at the scene after the accident. From the photographs, Mr. Snyder testified concerning the two accidents which directly related to the accident in question. We do not believe it was error to admit his testimony based upon his opinion gleaned from the photographs. As has been stated:

"Nor do we believe that foundation is lacking because the opinion of Almy was based on photographs instead of an examination of the wrecked automobiles. It is common practice for medical experts to base their opinions upon X-rays and other similar descriptive evidence or upon hypothetical questions. Defendant was given free range to cross-examine regarding the accuracy of the photographs. The fact that the opinion was based on photographs instead of an examination of the automobiles might conceivably affect its weight, but would not render it inadmissible because of a lack of foundation if the witness were otherwise qualified and the photographs were sufficiently descriptive and clear so that they presented the facts necessary to enable the witness to form an opinion with the necessary degree of ac-

curacy." Woyak v. Konieske, 237 Minn. 213, 54 N.W.2d 649, at 655, 33 A.L.R.2d 1241 (1952).

The fact that the witness testified from photographs was a matter to be considered by the jury in determining what weight to give to his testimony, but it did not make his testimony inadmissible.

■ Defendants' third assignment of error is that the trial court erred in admitting testimony regarding another accident which happened approximately 15 minutes after this one, for the reason that the conditions existing at the time of the second accident were radically different from those existing at the time of plaintiffs' collision. With this we do not agree.

The data collected by the investigating officers and the observations of witnesses related to the position and condition of the vehicles and roadway after both accidents. The second accident formed an integral part of the testimony and evidence concerning the first accident. To have tried to exclude all testimony concerning the second accident would have made the evidence presented to the jury not only incomplete but disjointed and confusing.

The defendants' fourth assignment of error concerns the failure of the trial court to instruct the jury that the defendants were under no statutory duty to carry or set out flares or other warning devices, and that the statute did not preclude the defendants from stopping their truck upon the highway.

■ We have stated herein that the statutes (28–960–961, A.R.S.) requiring that trucks carry and set out flares and other warning devices, when disabled, did not apply to the defendants in this case. Since the plaintiffs did not claim that the defendants were negligent by virtue of the violation of this statute, we do not see that an instruction concerning the statute was indicated here. Indeed, in the absence of an additional cautionary instruction, to have directed the jury that the defendants were under no statutory obligation to carry

and display flares and other warning devices might well have led the jury to believe that the defendants owed no duty at all to set out flares and other warning devices or to park their truck so as to avoid an unreasonable risk of harm to others. Wolfswinkel v. Southern Pacific Co., 81 Ariz. 302, 305 P.2d 447 (1956).

Our Supreme Court has stated:

"While from the failure to heed a statute or regulation the law conclusively infers a want of reasonable care, from the non-existence of statutes or regulations no rational inference concerning the care a reasonable prudent man should use can be drawn. The care required is dependent upon the known and the reasonably foreseeable conditions existing at the crossing. That statutes or regulations did not exist cannot afford any guide by which defendants as reasonable and prudent men could have determined appropriate conduct or which the jury, in retrospect, might conclude defendants did or did not act reasonably and prudently under the circumstances." Alires v. Southern Pacific Company, 93 Ariz. 97, 110, 111, 378 P.2d 913, 922 (1963)

Defendants' last assignment of error concerns the refusal of the trial court to give an instruction that if plaintiff Schroeder's conduct was an intervening or superseding cause of the accident, defendants should be relieved of responsibility therefor.

■ An intervening cause (force or act) is an independent cause which steps between the original wrongful act or omission of the defendant and the injury to the plaintiff, alters the natural and normal sequence of events and produces a result which would have not otherwise occurred. Not all intervening causes are superseding causes. A superseding cause is an intervening cause which by its nature becomes the proximate cause of the injury and relieves the defendant of any liability for said injury.

■ For an intervening cause to be a superseding cause it must be a cause which

could not have been reasonably foreseen or anticipated by the defendant. Stated differently, in order for an intervening cause to supersede the original negligence, the intervening cause must be so extraordinary that the defendant could not have reasonably anticipated that the cause would intervene. Hartman v. Atchison, T. & S. F. Ry., 94 Kan. 184, 146 P. 335, L.R.A.1915 D, 563 (1915), Superior Oil Co. v. Richmond, 172 Miss. 407, 159 So. 850 (1935), American Mut. Liability Ins. Co. v. Buckley & Co., 117 F.2d 845 (3 Cir. 1941), Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417 (1941).

"An intervening force is defined as being one that actively operates in producing harm after the original actor's negligent act or omission has been committed. * * * This situation usually arises when the original negligent act has ceased its active operation and has produced a passive condition, such as existed after the defendant had parked his car and turned out the lights. It is obvious that after this was done, no harm could have come from the condition created by him without the aid of some active and intervening force; in this case, undoubtedly a car driven by a third person. But an intervening force, while it may be a cause of an injury, is not always a superseding cause. The question of whether it is or is not the latter is determined by many considerations, one of the principal of which is whether the intervening cause is an extraordinary one, or one which might normally be expected by a reasonable person in view of the situation existing at the time of its intervention." Herzberg v. White, 49 Ariz. 313, at 321, 66 P.2d 253, at 257 (1937).

■ Evidence on the issue of negligence will be viewed in a light most favorable to the party who prevailed in the trial court, Sax v. Kopelman, 96 Ariz. 394, 396 P.2d 17 (1964). In the instant case, the alleged acts of the plaintiff Schroeder, while they

may have contributed to the accident, were certainly such acts as could have been reasonably anticipated by the defendants when they placed and left their truck in the middle of a highway at night.

In this jurisdiction where, by constitutional provision, all question of contributory negligence must be submitted to the jury, it is not surprising that counsel will exert strong pressure upon the courts to recognize other doctrines and apply them in what are logically and legally contributory negligence questions. This case is no exception. If contributory negligence were a question of law rather than for the jury, we feel certain that the defendants would be arguing most strenuously that the plaintiff Schroeder, was guilty of contributory negligence. However, being denied that ground for appeal, defendants attempt to clothe the animal in different garments and run him through, thus disguised. This cannot change the basic nature of the beast. In the instant case, the testimony and evidence indicate a question of contributory negligence for the jury and no more.

■ Based on the evidence, the trial court quite properly refused to instruct the jury on the question of intervening and superseding cause.

■ ■ We are left with one question yet unanswered. Can the alleged negligence of the driver of the pick-up, Schroeder, constitute intervening or superseding negligence as between the defendants and the plaintiff Martin, a passenger in the Schroeder pick-up truck? We think not. Even viewing the alleged negligence of Schroeder in a light most strongly in favor of the defendants, as between them and the plaintiff Martin, Schroeder's negligence is at best no more than concurrent negligence. We find no error in the instructions on negligence as between the defendants and the plaintiff Martin.

The judgment is affirmed.

STEVENS, C. J, and DONOFRIO, J., concurring.