[Civil No. 3776.   Filed March 29, 1937.]

[66 Pac. (2d) 253.]

BENJAMIN HERZBERG, Appellant, v. BLANCHE WHITE, as Administratrix of the Estate of MARGARET COWAN, Deceased, Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Messrs. Laney & Laney, for Appellee.

LOCKWOOD, J.—Blanche White, hereinafter called plaintiff, as administratrix of the estate of Margaret Cowan, deceased, brought suit against Benjamin Herzberg, hereinafter called defendant, for damages, alleging that it was the negligence of the defendant which caused the death of her intestate. The case was tried to a jury which returned a verdict in favor of plaintiff in the sum of $250, and she promptly moved for a new trial, alleging insufficiency of the damages. Defendant resisted the motion for new trial, but an order was made granting it, and he has appealed.

The situation is a rather unusual one, in that the defendant seeks to have the verdict and judgment against himself sustained, while the plaintiff asks that it be set aside. The reason assigned by defendant for his position is that while contending he is not liable in any manner, yet the amount of the verdict is so small that he would rather pay it than to go to the expense of a new trial. We are of the opinion that if the plaintiff is entitled, as a matter of law and fact, to

recover any amount as against defendant, the court was correct in granting the motion for new trial. Deceased, at the time of her death, was a young woman 21 years of age, who had recently become a graduate nurse. The evidence showed that she was exceptionally bright and well trained in her profession, and that her life expectancy was some 40 years. We think the only reasonable conclusion is that her estate would have benefited far more than $250 had she lived. Defendant contends, however, that even admitting this to be true, the evidence and the law show that no judgment of any nature can be sustained against him. If this be true, it would be a mere waste of time and money for us to sustain the order granting a new trial, for the only result of such a trial would necessarily be an instructed verdict in favor of defendant. We, therefore, consider the ultimate question, which is whether there is sufficient evidence to sustain any verdict in favor of plaintiff. There is very little dispute, either in the evidence or in the ultimate facts which might be deduced therefrom, and we therefore state those facts as follows.

Defendant, Benjamin Herzberg, is a physician engaged in the practice of his profession in Arizona, being at the time of the trial approximately 32 years of age. He had become acquainted with deceased while she was taking her training course in St. Joseph's Hospital, in Phoenix, and that acquaintanceship had gradually ripened into a warm friendship. Deceased's mother lived in Idaho, and a short time before the unfortunate accident which resulted in her death, she had returned from a visit to that state, bringing with her some presents from her mother to her sister, who resided in Coolidge, Arizona. This sister was a patient of defendant's, and deceased, shortly after her return, telephoned him, asking when he next expected to visit her sister in Coolidge, and saying that she

would like to accompany him to see her sister and deliver the presents. Defendant told her he was not sure what time he could go, but would let her know when he had definitely determined, and on the evening of the same day he notified her that he would take her to Coolidge as company on a professional visit by him to her sister. They left Phoenix some time about 7:30 P. M., December 6, 1934, the night being rather a dark one. As they reached a point about 300 yards from the west end of the Tempe bridge, some nine miles east of Phoenix, the left rear tire of the car driven by Dr. Herzberg became punctured. He then stopped the car, pulling it over to the right edge of the pavement, so that the left front and rear wheels remained on the pavement about 2 feet from the edge, while the remainder of the car was on the unpaved portion of the highway. At this point, the paved portion of the highway is 36 feet in width, being what is known as a four-lane highway, while the unpaved portion on the side where defendant had stopped his car was wide enough so that he could easily have parked it entirely off of the pavement. There was a slight curve in the highway at the point where the car was parked, but there was nothing to obstruct the view of any other person on the highway for a distance of at least 500 feet in either direction, if the light was sufficient to see that far. Defendant then handed to deceased a surgical flash-light, which he was in the habit of carrying in his car, and asked her to hold it so he could see to change the tire. Both he and deceased got out of the car and passed around to the left rear wheel, where he jacked up the car and started to remove the punctured tire. At this time deceased was standing somewhat to the rear of defendant, playing the flash-light on the tire so as to assist him in getting it off. Apparently she did not remain in one position, but moved from side to side of defendant in her endeavor to assist him. Either

defendant or deceased, when getting out of the car, turned off both the head and tail lights although the evidence does not show definitely by whom it was done. Defendant was engaged in removing the tire when his memory suddenly became blank, and he remembers nothing more until he found himself in the hospital some days later. There were no eye-witnesses to what happened thereafter, but evidently in a very short period several cars arrived near the point where defendant's car was parked, some coming from the east and some from the west, and their occupants saw two bodies lying on the road near defendant's car. The body of deceased was lying at a point about 15 feet east of the car, while defendant's body was some 10 or 15 feet further to the east beyond that of deceased. The car of defendant was still on the jack and the lug wrench, which projected out a foot or more over the pavement, was still on one of the lugs. The handle of one of the doors of the car had apparently been broken off, but it does not appear as to which door it was, nor whether the door was open or closed at the time it was broken. Deceased was dead at the time aid first reached the scene of the accident, and the medical examination showed later that her right hip had been bruised and lacerated slightly, and her skull fractured. Defendant was alive but had suffered very severe injuries, a concussion of the brain, a number of broken ribs, and other injuries of like nature. The driver of one of the first cars to arrive at the scene of the accident, coming from Tempe, testified that a large black sedan, driven at a high rate of speed, passed him on the Tempe bridge.

The only reasonable conclusion which can be drawn from the foregoing statement of facts, we think, may be stated as follows: Defendant and deceased were on their way to Coolidge, Arizona, the former being on a professional trip and the latter his guest. One of the

tires of the car in which they were riding became punctured and defendant stopped apparently not quite off the paved portion of the highway near the Tempe bridge, turned out the lights and got out of the car to replace the tire. He requested the deceased to aid him by playing the flash-light on the tire which was about to be removed, which she did. They were, while engaged in the removal of the tire, standing on the paved portion of the highway anywhere from 3 to 8 feet inside the south edge, when a car coming from the direction of Phoenix struck them, hurling them both to the ground but not touching defendant's car. As a result of this, deceased was killed. The questions then are: (a) Was defendant in any way negligent in the duty which he owed to deceased under these circumstances and at the time? and (b) If so, was his negligence a proximate cause of her death? If both of these questions are to be answered in the affirmative, the plaintiff is entitled to recover from the defendant such sum as will reasonably compensate the estate of deceased for her untimely death, but if either one must be answered, as a matter of law, in the negative, plaintiff cannot recover anything.

Let us consider first whether defendant was guilty of negligence in the premises. It is the position of the plaintiff that he was in two respects: first, that he parked his car on the paved portion of the highway when there was ample room at that point to park it entirely off the pavement, and, second, that he turned off both the front and rear lights on his car at a time when the law required that he keep them burning. Sections 1602 and 1623, Rev. Code 1928, describe the duties of the driver of a car in regard to parking on the highway and to the use of lighting equipment. It is not necessary for us to quote these sections, for the evidence clearly shows that defendant did violate both of them. It is, of course, *prima facie*

negligence to violate any positive direction of the stat-
ute in regard to the manner in which a motor vehicle
shall be operated upon the highway, but it is not ac-
tionable negligence unless it appears that such negli-
gence was a legal cause of another's harm.   2 Restate-
ment, Torts, § 430.   We, therefore, consider whether
either of these two acts of negligence constituted a
legal cause of the accident which resulted in the death
of deceased.

■■■■   Negligent conduct is a legal cause of harm
to another if (a) the conduct is a substantial factor
in bringing about the injury, and (b) there is no special
rule of law relieving the actor from liability.   Id.,
§ 431.   Let us determine first whether the conduct of
defendant was a substantial factor in bringing about
the injury.   Apparently there were three successive
steps which caused the accident, and it would not have
happened if any of these steps had been omitted.   The
first was the parking of defendant's car on the pave-
ment.   If he had parked it a proper distance from the
edge of the pavement, it is reasonable to believe that
the accident would not have occurred, for, judging
from the fact that his car was not even knocked off
the jack, the death car must have passed it at least
three or four feet inside of the pavement edge.   We
think, therefore, that the jury was justified in finding
that had it not been for the negligent conduct of the
defendant in parking his car as aforesaid, the acci-
dent would not have happened, and in such case, even
though there were two other factors without which it
would not have occurred, defendant's negligence was
a substantial factor in bringing about the accident.

■■   We consider next whether there is any rule
of law which relieves the defendant from legal re-
sponsibility for the accident even though his conduct
was a substantial factor in causing it.   He claims there
are two such rules.   His first contention is based on

the theory that had deceased remained in the car, and not gone around to hold the flash-light for defendant, the evidence shows clearly she would not have been harmed. Admitting that this is true and that deceased was under no obligation, legal, moral, nor social, to hold the flash-light as she did, but acted of her own volition with full knowledge that she was assuming a position of danger, her conduct at the most would be contributory negligence. It is the general rule of law that where a plaintiff voluntarily exposes himself to a danger created wholly or in part by the defendant's negligence, which danger the plaintiff knew or had reason to know, he is guilty of contributory negligence and such contributory negligence bars recovery against a defendant whose negligent conduct would otherwise make him liable to the plaintiff. Id., §§ 466, 467. In most jurisdictions when the facts are not in dispute, and the court is of the opinion that but one inference can be drawn from them as to the duty of a reasonable man under the circumstances, the question of whether those facts constitute contributory negligence is a matter of law for the court, and not one of fact for the jury. 45 C. J. 1305, and cases cited. Arizona, however, is peculiar in its attitude towards this question, for in this jurisdiction our Constitution provides:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Article 18, § 5, Const. of Arizona; *Pacific Const. Co.* v. *Cochran*, 29 Ariz. 554, 243 Pac. 405; *Inspiration Consol. Copper Co.* v. *Conwell*, 21 Ariz. 480, 190 Pac. 88.

Even though we, as individuals, are convinced that when a person of the admitted age and intelligence of deceased deliberately placed herself, on a dark night, in the position in which she must have been when she met her death, she knowingly and deliberately put her-

self in a position where the negligence of the defendant would endanger her life, yet the verdict of the jury is conclusive upon us as judges on this point, and we are, therefore, compelled to hold that defendant is not relieved of responsibility because of the conduct of deceased, no matter how reckless we personally may think that conduct was.

We come then to the other defense urged by defendant which is, in substance, that his negligence was not the proximate cause of the accident. It is the law that where an injury is produced by an intervening and superseding cause, even though the original negligence may have been a substantial factor in bringing about the injury, the original actor is not legally responsible therefor. An intervening force is defined as being one that actively operates in producing harm after the original actor's negligent act or omission has been committed. 2 Restatement, Torts, § 441. This situation usually arises when the original negligent act has ceased its active operation and has produced a passive condition, such as existed after the defendant had parked his car and turned out the lights. It is obvious that after this was done, no harm could have come from the condition created by him without the aid of some active and intervening force; in this case, undoubtedly a car driven by a third person. But an intervening force, while it may be a cause of an injury, is not always a superseding cause. The question of whether it is or is not the latter is determined by many considerations, one of the principal of which is whether the intervening cause is an extraordinary one, or one which might normally be expected by a reasonable person in view of the situation existing at the time of its intervention. Id., § 442 (b). We have recently decided a case in which this question was the determining factor. *Salt River Valley Water Users' Assn.* v. *Cornum, ante,* p. 1, 63 Pac. (2d) 639. In that case, as in the case at

bar, it was claimed the defendant had negligently created a passive condition which was a proximate cause of injury to another. We held in that case, as in this, that the defendant was negligent in its creation of the condition which existed at the time of the accident, but on the vital point of superseding cause, we think the two cases differ. In the Cornum case, the active intervening cause was of so extraordinary a nature that we were of the opinion a reasonably prudent man could not have anticipated its occurrence and that it was, therefore, not merely an intervening but a superseding cause of the accident. In the present case, we think the circumstances were very different. The highway between Tempe and Phoenix is probably traveled by automobiles more than any road in the state, and its physical construction alone would indicate to even a stranger that traffic thereon was unusually heavy. Any reasonable person must be held to have known and anticipated, therefore, that cars might pass on the pavement where defendant had parked his car almost momentarily. Under such circumstances, the parking of the car partially on the paved portion of the highway after dark, with the lights out, created a situation of such danger that an ordinarily prudent man should have anticipated that persons standing on the pavement to the left of the car might be struck at any time by a passing automobile. It thus appears that the active intervening cause, being of such a nature that it could or should have been reasonably anticipated by defendant, was not a superseding cause. *Salt River Valley Water Users' Assn.* v. *Cornum, supra.* This being the case, we think the only real defense which could have been maintained by defendant on the admitted facts of the case was the alleged contributory negligence of the deceased, and since this is a matter of fact for the jury in this jurisdiction, it was justified in returning a verdict in favor of plaintiff.

As we have said in the beginning of this case, if such a verdict was justified at all, the amount was grossly inadequate, and the trial court very properly ordered a new trial.

The order appealed from is affirmed.

McALISTER, C. J., and ROSS, J., concur.