442 P.2d 153

Lucille WORTHINGTON, Appellant,

v.

Albert H. FUNK and Mary Funk, husband
and wife, Appellees.

No. I CA–CIV 588.

Court of Appeals of Arizona.

June 12, 1968.

Langerman, Begam & Lewis, by Samuel Langerman and Robert G. Begam, Phoenix, for appellant.

McKesson, Renaud, Cook & Miller, by J. Gordon Cook, Phoenix, for appellees.

DONOFRIO, Acting Chief Judge.

This appeal involves an action brought by plaintiff Lucille Worthington against Albert H. Funk and Mary Funk, defendants, to recover damages for personal injuries sustained by her in an automobile accident. Plaintiff appeals from the judgment on the verdict against her and from the court's order denying her motion for a new trial.

We set forth briefly certain facts which are pertinent to the determination of this appeal. The collision occurred on April 13, 1960, at about 7:40 a. m. in the 6200 block on East McDowell Road. The highway at this point is four lanes wide, two lanes being for traffic in each direction. Each lane is approximately 10 feet wide. Plaintiff Lucille Worthington was driving West on McDowell Road in the outside, or north, lane of traffic when her car, a Jaguar, started to choke and sputter and finally came to a stop within the traffic lane. Plaintiff testified she put the gear in neutral to try to start the engine, and as she did so her car started to roll backward. She then put the emergency brake on and the car stopped.

Defendant Mary Funk had been driving her Cadillac for some distance behind plaintiff in the same traffic lane. Defendant testified that she noticed plaintiff's car slow down and stop when she was about 200 feet behind it at which time she reduced her speed, looked into her rear view mirror, saw that the inside lane was clear, and started to turn into the passing lane. When midway between the two lanes she observed the Jaguar rolling backward. She immediately put on her brakes which caused her to swerve a few inches over the double line into the north lane of the eastbound traffic, striking a Renault automobile which was eastbound in the inside traffic lane. The left front of the Cadillac struck the rear left side of the Renault, and the Jaguar was struck on the left rear side by defendant's Cadillac. There was conflicting testimony as to whether the Cadillac struck the Jaguar first, or whether it struck the Renault first and was propelled into the rear side of the Jaguar. The police officer who was called to the scene of the collision, and who was qualified as an expert in the investigation of motor vehicle accidents, testified that the first point of impact was with the Renault, and the second with the Jaguar.

Plaintiff has raised several questions, the first of which is that the trial court erred in giving a "sudden emergency" instruction to the jury. There is no suggestion that the sudden emergency instruction does not state the law. Since it appears to be a model uniform jury instruction containing the suggestions made by the Supreme Court in Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962), we set it forth:

"A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or to others is not expected nor required to use the

same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at the moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him although in the light of after events it should appear that a different course would have been better and safer.

"If a motor vehicle driver himself created the sudden emergency or brought about the perilous situation through his own negligence, he cannot avoid liability for an injury merely on the ground that his acts were done in the stress of a sudden emergency. He cannot shield himself behind an emergency created by his own negligence."

Plaintiff's objection is that there is no evidence in the record to warrant the giving of such an instruction. In determining this question, the evidence must be viewed in the light most favorable to the defendant who requested the instruction. Webb v. Hardin, 53 Ariz. 310, 89 P.2d 30 (1939). In weighing the sufficiency of evidence to justify the giving of an instruction, the inferences which reasonably and logically flow from the evidence are to be considered. Reichardt v. Albert, 89 Ariz. 322, 361 P.2d 934 (1961). Applying these rules, we must determine if the evidence is such that the jury would be justified in finding that the defendant, without fault on her part, was confronted with a sudden emergency situation created by plaintiff's actions.

A most significant fact to be considered, which is established by defendant's testimony, is her sudden realization of plaintiff's car beginning to roll backward toward her at a point when she was beginning to turn into the passing lane to pass plaintiff's car.

This unanticipated movement of a car would cause a person to instinctively apply his brakes immediately, perhaps tuning at the same time, to avoid danger. The jury could find that it was this movement that caused the collision with the oncoming car when the accident might otherwise have been avoided had defendant not applied her brakes in the manner she did. In this respect the sudden emergency instruction becomes important.

Plaintiff argues that since defendant saw plaintiff's car the distance in front of defendant as shown by the evidence, the sole cause of the ensuing collision was attributable to defendant's negligence. In effect she urges that the evidence is such that no reasonable men could differ that defendant was at fault in driving behind plaintiff in the manner in which she did, as she had adequate time to prevent herself from becoming involved with the situation which caused the collision; that it therefore could not be a sudden emergency situation.

Let us analyze the evidence as brought out by both sides. In her testimony defendant stated she did not realize plaintiff's car was stopped until she was 200 feet away from it, at which time she looked in her rear view mirror to see if she could proceed into the inside westbound traffic lane. She found it clear, and began to turn into said lane. When defendant was halfway into the lane she at that time noticed plaintiff's car begin to roll backward. Defendant immediately applied her brakes which caused her car to swerve two to six inches into the oncoming lane of traffic, which resulted in the collisions. We believe reasonable men could well conclude under these facts that defendant acted reasonably and that the sudden emergency created by the rolling of the car arose without any fault on her part. There was no reason to anticipate that plaintiff's car would start rolling backward. Defendant's conduct before the accident was not out of the ordinary. She testified that when she first noticed plaintiff's car in front of her

it seemed to be going slower than the regular traffic; that defendant was driving within the speed limit of 45 miles per hour; that when she noticed plaintiff's car was going slowly she slowed down to about 25 miles per hour. Plaintiff suggests there was enough room in the inside (left) lane to pass and the defendant should have moved into the passing lane long before she did. Had defendant placed herself in the passing lane earlier, and if at the instant of passing she noticed plaintiff's car rolling back toward her, her reaction no doubt would still have been the same, and the same collision would have occurred.

■ There is a conflict as to when the rolling back occurred in relation to the accident. Plaintiff testified that after her car stopped she turned the ignition key off and when she put the car in neutral it rolled back and she then set the brake. Defendant placed the rolling back at the instant she began to pass plaintiff. As to the distance of the rolling back movement, plaintiff testified that she may have moved as much as a foot. Defendant testified the move continued until the impact. The salient fact is not the distance, but the fact that it did roll back and that there was evidence that it rolled back until the impact. Defendant also testified that she did not apply her brakes as hard as she could because her little boy was not securely strapped in, but she did apply the brakes as quickly as she could. Considering the presence of the child, the jury could well conclude that defendant's reaction was still instinctive, common to an emergency situation. These conflicts on significant facts only prove that it is a question for the jury to determine whom to believe and whether defendant acted reasonably under the circumstances. Defendant was entitled to go to the jury on these issues and the instruction was therefore proper.

Plaintiff objects to the giving of an instruction as to the requirement to park a disabled car off the highway if practicable, A.R.S. § 28–871, and to the giving of instructions pertaining to the giving of signals when stopping, A.R.S. §§ 28–754, 28–755 and 28–756, for the reason that the evidence was uncontradicted that plaintiff came to a stop because of an unexpected failure of her car. We do not agree with plaintiff's contention.

■ According to the testimony, plaintiff had advance warning that her car was not operating properly. She testified that earlier that morning near Scottsdale Road her car began to sputter and she edged it off the pavement and it then stopped. Later, when her car again started to choke and sputter, the jury could well find that she should have been alerted that her car was again failing and should have driven it off the highway as far as possible. Physical facts as shown by exhibits in evidence show a shoulder on which plaintiff could have coasted partially, if not altogether, off the traveled portion of the highway. If she had stopped it more to the edge of the road it is reasonable to believe that the accident would not have occurred for, according to the evidence, defendant struck the oncoming car only a few inches over the center line. Likewise, if plaintiff intended to stop in the lane she was in, the jury could well find that she had enough time to give a proper signal and was negligent in stopping completely within the traveled portion of the highway without giving such a signal. Precluding an emergency situation that would not make it reasonable to give a signal, the statute provides that when one stops, one should signal the intention of such an act. It was for the jury to determine if such an emergency situation was present. There was enough evidence to justify a jury in finding that plaintiff, knowing she was going to stop, failed to give a proper signal. The question of whether the failure of the car was such that it left the car in the position in which it stopped in the lane instead of permitting the plaintiff to drive it toward the side of the highway was also one for the jury.

■ The aforementioned statutes quoted in the instructions provide the du-

ties owed by plaintiff as a motorist. Whether she violated these duties by the manner in which she brought her car to rest after it began to falter was for the jury to decide. A violation of the statutory duty of parking a disabled car or to signal on the stopping or sudden decrease of speed when there is opportunity to give the signal is negligence per se. Herzberg v. White, 49 Ariz. 313, 66 P.2d 253 (1937); Stearman v. Miranda, 97 Ariz. 55, 396 P.2d 622 (1964). Whether such statutory negligence in any way contributed to the accident was also a question for the jury. Plaintiff's actions with respect to the manner in which she stopped are also important in determining the reasonableness of defendant's driving and the predicament in which she found herself.

Finally, defendant was twice faced with two choices, once when she realized the Jaguar was stopped when she was approximately 200 feet behind it, at which time she had the opportunity of stopping or passing said automobile by proceeding from the outside to the inside westbound lane of traffic, and second, when the Jaguar rolled backward when defendant's vehicle was halfway into the inside lane of traffic, at which time she had the choice of applying her brakes or not applying her brakes and steering around the Jaguar. It was for the jury to determine whether she acted reasonably in this respect. Southwestern Freight Lines Ltd. v. Floyd, 58 Ariz. 249, 119 P.2d 120 (1941). We hold that the instructions by the trial judge were entirely proper.

We next consider the denial of plaintiff's motion for a directed verdict on the question of liability. Plaintiff urges that she should have received a directed verdict on the liability issue because her negligence was not a proximate cause and the defendant's negligence was a superseding cause.

Plaintiff in effect argues that even if the behavior of her automobile should have forewarned her that it would falter and she was negligent in the manner in which she stopped, and even if there was something more plaintiff could have done to get her stalled vehicle out of the way, failure to do so could not have been a proximate cause of the accident, since defendant had the entire south lane and part of the north lane on her half of the highway in which to pass plaintiff's stalled automobile, and defendant having been cognizant of the situation when at least 200 feet away from it, was negligent in failing to properly pass or in avoiding the accident; that defendant's intervening conduct was as a matter of law a superseding intervening cause. We cannot agree.

As we have discussed, the jury would be justified in finding plaintiff's negligence consisted primarily of three things:

(1) Not giving a proper stop signal;

(2) Stopping upon the traveled portion of the highway;

(3) Permitting the Jaguar to roll backward.

The question of whether an intervening force becomes a superseding cause applies only after the original actor's negligence comes to an end. It was stated in Herzberg v. White, supra, that:

"* * * An intervening force is defined as being one that actively operates in producing harm after the original actor's negligent act or omission has been committed. 2 Restatement, Torts, § 441. This situation usually arises when the original negligent act has ceased its active operation and has produced a passive condition, such as existed after the defendant had parked his car and turned out the lights. It is obvious that after this was done, no harm could have come from the condition created by him without the aid of some active and intervening force; in this case, undoubtedly a car driven by a third person. But an intervening force, while it may be a cause of an injury, is not always a superseding cause. The question of whether it is or is not the latter is determined by many considerations, one of the principal of

which is whether the intervening cause is an extraordinary one, or one which might normally be expected by a reasonable person in view of the situation existing at the time of its intervention. * * *" 49 Ariz. at 321, 66 P.2d at 257. Plaintiff's negligence came to an end only after the Jaguar stopped after rolling backward. According to defendant, this was at impact, for it rolled backward until then. Even assuming it rolled only a few feet at the time defendant was halfway into the inside lane, she then was faced with a choice, to-wit: apply her brakes or not. At this point she was considerably closer than 200 feet from the Jaguar for, as has been shown, after realizing the Jaguar was stopped when she was 200 feet away from it, she then looked in the mirror, saw the inside lane of traffic was clear and had proceeded halfway into the inside lane of traffic when at that time, and not before, the Jaguar started to roll backward. Under these circumstances it cannot be held as a matter of law that the conduct of defendant was so extraordinary that plaintiff could not have reasonably anticipated or foreseen it. City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301 (1965). We cannot say as a matter of law that the negligence of defendant was an intervening superseding cause, nor can we say as a matter of law that the negligence of plaintiff was not a proximate cause of the accident.

Another question raised by plaintiff is whether counsel must inform opposing counsel and the court immediately after his client is approached by a juror during a trial. The facts giving rise to this question are not of record except by the affidavit of counsel. During the course of the trial one of the jurymen told the defendant that he (the juror) was quite favorably impressed with defense counsel and that he might employ defense counsel as his own attorney in the future. At some subsequent time this conversation was related to defense counsel who apparently considered it unimportant, and disregarded it at that time. Later on, after the cause had been submitted to the jury, and before the verdict had been reached, defense counsel related the conversation to plaintiff's attorney and he in turn presented it to the trial judge. No motion for mistrial or for other relief was made. There is no showing that prejudice existed in the mind of the juror who expressed a favorable opinion concerning defense counsel. It is established in Arizona that when a party knows of the alleged misconduct of another party after the matter has been submitted to the jury, but before the jury reaches a verdict, the failure of the aggrieved party to move for a mistrial waives such alleged misconduct. Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734 (1948). In the instant case, since counsel for plaintiff did not avail himself of the remedy of asking for a mistrial, he cannot now bring this up on appeal.

Finally, we consider a question raised during oral argument concerning the last paragraph of defendant's Instruction No. 8. The forepart of this instruction provided that the violation of a statute or ordinance enacted for the safety of persons or property was negligence as a matter of law and then set forth A.R.S. §§ 27–754, 28–755, 28–756 and 28–871. The questioned paragraph of Instruction No. 8 reads:

> "Should you find that any party to this suit violated any of the above laws, then that party would be guilty of negligence as a matter of law and you should not debate that issue further, but should then consider the issue whether that negligence was a proximate cause of the injury."

Appellant urges that this portion of the instruction is in violation of the Arizona Constitution, Art. 18, § 5, A.R.S., and that the giving thereof was fundamental error which can be raised at this time. Trojanovich v. Marshall, 95 Ariz. 145, 388 P.2d 149 (1963).

The identical instruction and question was raised in Riley v. Jones, 6 Ariz. App. 120, 430 P.2d 699 (1967). Judge

Molloy, writing for the Court in Jones, and reviewing the opinions of our Supreme Court, including the case of Evans v. Pickett, 102 Ariz. 393, 430 P.2d 413 (1967) which was released by the Supreme Court the week before Judge Molloy's opinion, concluded that the questioned instruction was a correct statement of the law. We believe this to be an able analysis of the question presented and a correct determination to be followed herein. For a recent case, see Orlando v. Northcutt, Ariz., 441 P.2d 58 (1968).

Affirmed.

STEVENS, J., and D. L. GREER, Judge of Superior Court, concur.

NOTE: Chief Judge JAMES DUKE CAMERON, having requested that he be relieved from consideration of this matter, Judge D. L. GREER was called to sit in his stead and participate in the determination of this decision.