466 P.2d 766

Robbie ZELMAN and Debbie Zelman, by and through their Guardian ad Litem, Sam Zelman, Appellants,

v.

Paul O. STAUDER and J. Richard Stauder, co-executors of the Last Will of Clifford John Stauder, Deceased, Appellees.

No. 1 CA–CIV 867.

Court of Appeals of Arizona,
Division 1,
Department B.

March 23, 1970.

Rehearing Denied May 20, 1970.

Review Denied June 16, 1970.

Charles M. Brewer and Burch, Cracchiolo, Levie & Guyer, by Daniel Cracchiolo, Phoenix, for appellants.

McKesson, Renaud, Cook, Miller & Cordova, by J. Gordon Cook, Phoenix, for appellees.

JACOBSON, Judge.

The liability of a motorist for a collision occurring at a controlled intersection is presented in this appeal from the Superior Court of Maricopa County, Arizona.

Two minor children, ROBBIE ZELMAN and DEBBIE ZELMAN, plaintiffs-appellants, brought an action through their father and guardian ad litem, SAM ZELMAN for damages arising out of a motor vehicle collision against CLIFFORD JOHN STAUDER, defendant-appellee. Subsequent to the filing of the complaint in this action and prior to trial, the defendant died and his co-executors were substituted as parties-defendant. The matter was tried to a jury who returned a verdict in favor of the co-executors. A judgment was duly entered thereon and this appeal followed. (This opinion shall continue to refer to CLIFFORD JOHN STAUDER as the defendant.)

The facts stated in this opinion are taken in a light most strongly in favor of supporting the jury's verdict. Ulan v. Richtars, 8 Ariz.App. 351, 446 P.2d 255 (1968).

On March 15, 1963, the minor plaintiffs were passengers in an automobile being driven by their mother, Chari Ann Zelman which was proceeding south on Seventh Street in the City of Phoenix, Arizona. Mrs. Zelman was travelling within the posted speed limit of 35 miles per hour as she approached the intersection of Seventh Street and Oak Street, Seventh Street being at this juncture a four-lane through street, and the Zelman vehicle being in the southbound lane nearest the center line. Traffic entering Seventh Street from Oak Street is controlled by a non-mechanical stop sign. As defendant was deceased at the time of trial and his deposition had not been taken, the sole testimony as to how the accident occurred came from Mrs. Zelman. She testified as follows:

"Q Yes. The first time you saw it where was it?

"A He was coming out of a parking lot on the northeast corner. That was the first time I saw him.

"Q And what did you observe him do, if anything?

"A Well, he—he was just moving right out of the drive-in—the—the—there was a—you know how they have when you go into a market—there is a place where your parking lot is, and he was at an angle coming down the driveway from the parking lot, coming around.

"Q Is there a stop sign in that vicinity?

"A Yes. Uh huh.

"Q Did he stop?

"A Not that I observed. No.

"Q And what did you do when you saw him proceeding on to Seventh, please?

"A Well, when I was coming down and I saw him coming toward me—be-

cause then I—when I first glanced over there and saw him I proceeded to go, because it didn't dawn on me that he would just—that—but the minute that I saw him coming through the stop sign I tried to swerve to the right, but it was too late.

"A Yes. I tried, but it was too late.

"Q Did you brake your car—put on the brakes?

"A Yes. I tried. But it was too late."

The evidence disclosed that the right front fender of defendant's automobile struck the left front fender of the Zelman vehicle in the intersection of Seventh Street and Oak Street at a point midway in the southbound lane of traffic on Seventh Street and in the middle of the westbound lane of traffic on Oak Street.

The evidence further disclosed that the Zelman vehicle left skid marks approximately 55 feet long. No skid marks were visible from the defendant's automobile. Mrs. Zelman testified that immediately after the accident the defendant stated that he had not seen the Zelman vehicle. Defendant's presentation of evidence, insofar as liability was concerned, consisted primarily of the cross-examination of plaintiff's accident reconstruction expert. This cross-examination disclosed that considering the estimated speed of the defendant's vehicle in arriving at the point of collision, the estimated speed of the Zelman vehicle, the skid marks on the highway and various other factors affecting reaction time, coefficient of friction and braking, if a proper lookout had been maintained by Mrs. Zelman, she might have brought her car to a safe stop in time to avoid the collision with the defendant's vehicle.

Plaintiffs, at the close of the evidence, and under the facts as stated above, moved for a directed verdict in their favor as to the liability of the defendant.

Defendant did not seriously argue that he was not negligent in either running the stop sign or failing to observe traffic on the through street, but maintained both in the trial court and here that his negligence was not a proximate cause of the minor plaintiffs' injuries, and that Mrs. Zelman's negligence in failing to keep a proper lookout was the sole proximate cause of their injuries.

First, the status of these minor plaintiffs as they rode in their mother's vehicle, as passengers, needs to be clarified. The negligence of the driver of the vehicle in which they were riding may not be imputed to them, Salt River Valley Water Users' Association v. Green, 56 Ariz. 22, 104 P.2d 162 (1940), nor is it contended that they were guilty of contributory negligence. Thus, in this posture, the law has hermetically sealed these minor plaintiffs from any contributory negligence or any imputed negligence of third persons which might defeat their recovery.

We now direct our attention to defendant's argument on proximate cause. Where two or more persons or forces operate to bring about a tortious harm, problems arise in fixing responsibility because of the legal principle that a negligent defendant is only liable if his negligence was a "proximate cause" of the resulting injury. Wylie v. Moore, 52 Ariz. 537, 84 P.2d 450 (1938); Anderson v. Morgan, 73 Ariz. 344, 241 P.2d 786 (1952). To arrive at a solution to this problem, a workable definition of "proximate cause" must be employed. Arizona has through the years, adopted the definition of proximate cause as that cause which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the event and without which, the event would not have occurred. Inspiration Consolidated Copper Co. v. Conwell, 21 Ariz. 480, 190 P. 88 (1920); Brand v. J. H. Rose Trucking Company, 102 Ariz. 201, 427 P.2d 519 (1967). This definition, for our purposes here, tends to be confusing, for it introduces by its own terms the question of what constitutes an "efficient intervening cause." Arizona has specifically rejected the Restatement's "substantial factor" test as a definition of "proximate cause." McDowell v. Davis, 104 Ariz. 69, 448 P.2d

869 (1968); Restatement (Second) of Torts Sec. 431 (1965). Be that as it may, it is well established that there may be more than one proximate cause of an accident, Brand v. J. H. Rose Trucking Company, supra, for two separate actions by two separate individuals may each be a factor in causing a single harm.

, Under the facts of this case, no serious argument can be made that the defendant's admittedly negligent conduct was not a cause of this accident and plaintiffs' resulting injuries. Here the driver of the vehicle in which plaintiffs were riding was proceeding down Seventh Street within the posted speed limit when defendant ran a stop sign and a collision resulted. Under such facts, including the above-discussed fact that plaintiffs' rights are not to be affected by any contributory negligence of the driver of plaintiffs' vehicle, if defendant is to escape liability it must be under some theory that an intervening force has superseded defendant's negligence ("efficient intervening cause") so that his original negligence can no longer be considered as a proximate cause of plaintiffs' injuries. Cf. Salt River Valley Water Users' Association v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937); Herzberg v. White, 49 Ariz. 313, 66 P.2d 253 (1937).

■ A review of the Arizona cases reveals that their holdings are consistent with the position taken by Restatement (Second) of Torts, that where defendant's negligent course of conduct (as distinguished from the risk of harm created) actively continues up to the time the injury is sustained, then any outside force which is also a substantial factor in bringing about the injury is a concurrent cause of the injury and never an "intervening" force. Worthington v. Funk, 7 Ariz.App. 595, 442 P.2d 153 (1968); Restatement

(Second) of Torts Sec. 439 (1965). On the other hand, where the defendant's negligent *course of conduct* has terminated and only the *risk of harm* created by his prior negligent conduct is present at the time of injury then any outside force which is a substantial factor in bringing about the injury may be referred to as an intervening force.[1] This distinction has variously been referred to in terms of "dynamic-static" negligence and "active-passive" negligence. Salt River Valley Water Users' Association v. Cornum, supra; Herzberg v. White, supra; Molloy, Jury Instructions in Negligence Cases, 6 Ariz. L.Rev. 27, 32 (1964). This conceptual distinction is more than one of semantics for the question of "superseding cause" arises only where the facts disclose that an intervening force is present. Thus, if under the facts of a case the outside force was a concurrent cause of the injury, the issue of "superseding cause" is never reached and defendant's negligence will always remain a proximate cause of the injury. This does not mean, however, that all intervening forces are superseding causes. City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301 (1965); Herzberg v. White, supra.

■ Under the facts in this case and even when viewing the evidence in a light most favorable to defendant, it is clear that defendant was negligent in proceeding into the intersection in the face of oncoming traffic and this negligent *course of conduct* was active and continuous up to the time of the injury. Further we do not believe that twelve reasonable men could come to any conclusion but that defendant's negligent conduct was a cause of plaintiffs' injuries.

■ Applying the principles of law set forth above it is clear that Mrs. Zelman's

1. We have purposely used the term "intervening force" rather than the traditional term "intervening cause." This is for the purpose of avoiding confusion between a force, be that force human, animal or one of nature (see Restatement (Second) of Torts Sec. 442A, comment a), which may act upon the original negligence, and "superseding cause" which is such an intervening force as will relieve an actor from liability. Brand v. J. H. Rose Trucking Co., supra; Herzberg v. White, supra.

negligence was at most a concurrent cause of the minor plaintiffs' injuries, not an intervening force, and as a matter of law could not constitute a superseding cause relieving the defendant from liability. It therefore follows that the trial court should have granted plaintiffs' motion for a directed verdict as to the defendant's liability at the close of the evidence and its failure to do so requires a reversal in this matter.

Since our decision in this case requires a remand to the trial court for a new trial on the question of damages alone, we will not discuss the evidentiary contentions raised by plaintiffs, being confident that the chance of their being repeated on a new trial is remote. However, one other contention raised by plaintiffs does deserve comment. Defendant's counsel, after settling instructions with the court, and at the time of final argument to the jury, read to the jury from A.R.S. Sec. 28–952, subsec. c (As Amended in 1964), dealing with defective brakes. Defendant had previously requested and the court had refused an instruction based upon this section. While it may be proper, and in some cases even necessary, to read to the jury certain instructions which the court will give and which may embrace statutory pronouncements, it is highly prejudicial and improper to read statutes to the jury which have been expressly held not applicable by the trial court. Counsel's remedy, if he disagrees with the trial court's ruling as to the applicability of a particular statute to the facts at hand, is a proper objection and if the decision is against him, an appeal. To disregard the trial court's ruling and read to the jury the stricken statute cannot be condoned. Seaboard Air Line Ry. Co. v. Benton, 175 Ga. 491, 165 S.E. 593 (1932).

For the reasons previously set forth, the judgment of the trial court is reversed and the matter remanded with directions to enter judgment for the plaintiffs on the issue of defendant's liability and grant a new trial to plaintiffs on the issue of damages.

EUBANK, P. J., and HAIRE, J., concur.