468 P.2d 390

Anthony Andrew SANTANELLO, Appellant,

v.

Vern COOPER, Appellee.

No. 1 CA–CIV 996.

Court of Appeals of Arizona,
Division 1,
Department B.

April 28, 1970.

Rehearing Denied May 29, 1970.

Review Granted June 23, 1970.

Browder, Gillenwater & Daughton, by Powell B. Gillenwater, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John H. Lyons, Ralph Hunsaker, Phoenix, for appellee.

EUBANK, Presiding Judge.

This is an appeal from an order of the trial court granting a new trial in a personal injury action. The main question involved is whether the trial court abused its discretion in granting the new trial.

Plaintiff and appellant, Anthony Andrew Santanello, sued defendants Vern Cooper and Floyd Ray Highfill, as joint or concurrent tort-feasors, in the same complaint and in the same cause of action. He alleged, specifically, that Highfill was negligent for causing his motor vehicle to collide with the rear of his vehicle, and that Cooper was negligent in allowing his dog to run at large, in not restraining the dog by a leash, and in permitting the dog to run loose and cross a heavily traveled highway, all in violation of Phoenix City Ordinance #G–589.[1] He further alleged

---

[1] Ordinance of the City of Phoenix No. G–589 found in Code of the City of Phoenix, Article III, Section 8–15, entitled, *"Runing at Large"*.

" '(1) No person owning, keeping, possessing, harboring, or maintaining a dog shall allow said dog to be at large. A dog is not deemed to be at large:

" '(a) If said dog is restrained by a leash, chain, rope, or cord of not more

than six feet in length and of sufficient strength to control the action of said dog.' "

\* \* \* \* \*

and Section 8–11 defines "At large" as " ' \* \* \* off the premises of the owner and not under the control of the owner, or other persons acting for the owner.' "

that their negligent acts combined to cause his back injury. Both defendants, in separate answers denied that they were negligent and thereafter the matter was tried to a jury. A verdict against both defendants was returned, jointly and separately, in the amount of $50,000. Judgment was entered by the court on August 6, 1968, and a timely motion for a new trial was filed by defendant Cooper, only. The trial court granted his motion and entered its order granting defendant Cooper a new trial. Plaintiff Santanello appeals from this order.

The evidence introduced at the trial defines the negligent acts complained of as follows:

The plaintiff, Santanello, was alone and driving his 1953 Falcon Ranchero east near the 4800 block on East Camelback Road at approximately 4:15 P.M. on March 19, 1965. He was occupying the center lane and traveling with the flow of traffic at approximately 35 to 40 miles per hour, within the posted speed limit. Visibility was good and the traffic was moderate. At the same time, in the same lane, at the same speed and five to eight car lengths behind, the plaintiff was being followed by Floyd Ray Highfill, defendant, in his 1964 Chevrolet Pickup Truck. The plaintiff testified that the accident occurred as follows:

"A [Santanello] Well, I was going along with the flow of traffic like I said about 35 or 40 miles an hour, and I have got about just before I started making that bend there, I think the name of the road is Camelhead, [sic] and this dog, I spotted this dog in front of me, and he shot right across the street from me in front of me. And, what I did was try to keep from hitting him, and when I did, I would say I was at a complete stop when this truck behind me hit me. * * *"

He then testified that he did not give any kind of an arm signal as only four or five seconds elapsed between the time he saw the dog, stopped and was hit from the rear by defendant-Highfill. Plaintiff characterized his fast braking stop as a reflex action and not as a panic stop.

Defendant-Highfill testified that he was following the plaintiff in his truck, at least five to eight car lengths behind, when he observed a dog crossing the north lane on the north side of the road traveling south approximately 150 feet ahead. He testified:

"A [Highfill] If I recall the dog right, he paused as he got to the center line, and he didn't just jump on across. Now this is the way I remember it, he paused and looked back and then turned in front of Tony's [Santanello] pickup."

\* \* \* \* \* \*

"Q When were you first aware that Mr. Santanello was stopping his car?

\* \* \* \* \* \*

"A When I was just following along behind and the dog jumped in front?

"Q You saw the dog jump in front of his car?

"A Yes. And I had already taken my foot off the footfeed. I don't recall if I had applied my brakes at that point or not, but I do recall when I saw the dog I had released the foot accelerator. * * *

\* \* \* \* \* \*

"A Then when I suddenly became aware that the pickup was stopping, then of course I applied my brakes too.

"Q But you did see the dog run in front of the pickup?

"A I saw the dog, then I was ready to stop or tried to be."

Mr. Highfill then testified that he couldn't stop in time and that his truck collided with the rear of plaintiff's Ranchero. He also testified that the plaintiff ran over the dog, that it came out on the right-hand side of the truck and ran off to the north in the same direction from which it had come.

Plaintiff established to the satisfaction of the jury that the dog was owned by

Vern Cooper, defendant and appellee herein, but no evidence was presented as to the length of time the dog had been loose, or the circumstances surrounding its being away from the defendant-Cooper's residence on the day of the accident.

The trial court gave three reasons for granting defendant-Cooper a new trial. They are as follows:

\* \* \* \* \* \*

"The voir dire questions propounded to members of the jury panel by plaintiff's attorney pertaining to the filing of claims in connection with accidents, automobile or other instruments, etc., and if any member of their families were engaged in the processing of claims, etc., were prejudicial to defendant Cooper, and it is the Court's opinion that such questions were of such a nature as to prompt the inference that insurance was involved in the case. The occupation, residence, etc., of the jurors had already been elicited and no occupation or engagement given by members of the jury panel should have prompted these questions.

"For the further reason that the evidence required consideration of a superseding cause or intervening act which produced the injuries sustained by plaintiff, other than the Cooper dog, and the Court should have given defendants [sic] requested instruction No. 15, over plaintiff's objections, defining what constituted a superseding cause of intervening act, and stating the law more adequately for the jury's guidance in this respect.

"Further, the Court should have read Sec. 28–701–A; A.R.S. over plaintiff's objection, to the jury, as this section had a bearing upon the evidence presented and should have been considered in connection with superseding cause and/or intervening act."

In addition to the foregoing grounds for granting a new trial, defendant-Cooper also urged to the trial court and this court, the failure of the trial court to give his requested Instruction No. 26 requiring the jury to find that before they could find him liable to the plaintiff for violation of the city ordinance they must find that he intentionally or negligently violated that city ordinance.

■ The court's order complies with Rule 59(m), Rules of Civil Procedure, 16 A.R.S., in specifying with particularity the grounds upon which the new trial was granted. Plaintiff-Santanello urges that each of the three grounds specified is an insufficient ground for granting a new trial and consequently the order should be vacated and the jury verdict reinstated. The burden is upon him to demonstrate the trial court's abuse of discretion. Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809 (1966).

### THE MENTION OF INSURANCE

As to the first ground set forth by the trial court, plaintiff's voir dire examination of the jury panel, was in part as follows:

"Have any of you filed any claim of any kind arising out of any kind of an accident situation, whether it would be with an automobile or any other type of instrument?

"Are any of you employed in an occupation or any members of your family employed in an occupation where your duties are to handle the processing of claims as they come through?

"Do any of you or members of your family work in such an occupation?"

Defendant Cooper made no objection to the questions when they were asked. The voir dire continued until all counsel had concluded this questioning. Each counsel in turn then proceeded to exercise their challenges and the selected jury was sworn. Two opening statements were made before the trial was continued until Monday morning. On Monday morning defendant-Cooper moved for a mistrial:

"Mr. Hunsaker: [for Cooper] I would move for a mistrial on the basis of Mr. Gillenwater's voir dire of the jury where

he asked the jury *if they worked for any company that processed any claims.* It can be asked for only one reason. There is insurance in the case. I believe it is improper voir dire question. (Emphasis added).

"The Court: I was afraid he was going to jump over the traces.

"Mr. Gillenwater: [for Santanello] It is a proper question I think. It is well known people who do process claims are not going to be sympathetic to an injured person. We are entitled to know what their sympathies are based on their employment.

"The Court: Well, the motion will be denied. I would consider that close to the border line myself. * * * "

As can be seen from the above interplay, the only objection made by defendant-Cooper was to the second question—processing claims—which the court denied. Our concern here is to determine whether or not the court abused its discretion in granting a new trial on the basis of the above voir dire examination.

■ Judicial discretion has been defined as the power of decision, exercised to the necessary end of awarding justice, and based upon reason and the law, but for which decision there is no special governing statute or rule. Bowers, Judicial Discretion of Trial Courts, § 10, p. 14 (1931). In the same section, Bowers quotes Lord Mansfield's famous definition that, "Discretion, when applied to a court of justice, means sound discretion guided by law. It must be governed by rule, not by humor; it must not be arbitrary, vague and fanciful, but legal and regular." Judicial discretion then is really legal discretion to be exercised in discovering the course of action prescribed by the law. Re Welisch, 18 Ariz. 517, 521, 163 P. 264 (1917). These definitions adequately serve

in this case. *See* Bowman v. Hall, 83 Ariz. 56, 59, 316 P.2d 484 (1957).

The law in Arizona is solidly committed to the proposition that the introduction of either the existence of or the lack of insurance into a jury tried case results in prejudice and constitutes reversible error. Blue Bar Taxicab and Transfer Co. v. Hudspeth, 25 Ariz. 287, 216 P. 246 (1923); Waid v. Bergschneider, 94 Ariz. 21, 23, 381 P.2d 568 (1963); 4 A.L.R.2d 767 et seq.[2] This strict rule was modified by our Supreme Court in Muehlebach v. Mercer Mortuary and Chapel, Inc., 93 Ariz. 60, 378 P.2d 741 (1963) to the effect that the mere mention of the word "insurance" once in a trial did not justify a mistrial. In the instant case the objected to portion of the voir dire of the jury did not specifically mention *insurance*, but inquired as to whether the particular occupation of the prospective jurors or members of their family involved the processing of claims. In this day of large corporate and public employers within Arizona, it is common knowledge that numerous employees of such concerns are engaged in processing various personal injury claims arising either from industrially related accidents or from accidents involving their company or agency and third parties. It is possible that a prospective juror who has been engaged in such an occupation for an extended period of time may become hardened to the pleas of those injured both as to the issue of liability and damages. The necessity, from the plaintiff's view of anticipating such bias, for the purpose of knowledgeably exercising his peremptory challenges and challenges for cause in order to secure a fair and impartial jury for the trial of the case, cannot be denied. Wilson v. Wiggins, 54 Ariz. 240, 94 P.2d 870 (1939); State v. Taylor, 9 Ariz.App. 290, 451 P.2d 648 (1969). If this voir dire was proper,

2. *See* Tom Reed Gold Mines Co. v. Morrison, 26 Ariz. 281, 224 P. 822 (1924); Consolidated Motors v. Ketcham, 49 Ariz. 295, 66 P.2d 246 (1937); Northern Ariz. Supply Co. v. Stinson, 73 Ariz. 109, 238

P.2d 937 (1951); Dunipace v. Martin, 73 Ariz. 415, 242 P.2d 543 (1952); Sisk v. Ball, 91 Ariz. 239, 371 P.2d 594 (1962); E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740.

of necessity, it would not serve as a proper basis for granting a new trial to the defendant Cooper.

However, in addition to the above voir dire of the jury, counsel for defendant Highfill, who did not appeal from the jury verdict, questioned the prospective juror Michael as follows:

"[Q] Does your work entail a reviewing of accident reports or discussions with anybody or making statistics concerning causes of accidents?

"[A] I don't handle the accidents as such on the highway, but I do handle the accidents processed to the *insurance companies* where a patrol car has been damaged." (Emphasis added.)

Earlier the court questioning prospective juror Ross, received this answer to its question whether any of them or their immediate family had been involved in an automobile accident:

"About three years ago someone rammed the rear end of our car.

"I was in the hospital about six weeks, but it didn't go to court or anything. The *insurance company* settled." (Emphasis added.)

We do not deem these two instances of the mention of insurance significant where they were responsive to questions asked by the court and defendant Highfill and where no objection was made to them, and, most importantly, where the trial court did not rely upon these responses as a basis for its granting a new trial. See E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740; Waid v. Bergschneider, supra; Muehlebach v. Mercer Mortuary and Chapel, Inc. supra.

Under the Arizona decisions, the vice to be avoided is any indication to the jury that insurance does, or does not, exist in the case then being considered by the jury. No such indication can be reasonably inferred from the reference to insurance above set forth.

■ The voir dire by counsel and mention of insurance constituted an insufficient basis for granting a new trial in this cause and we hold that the trial court exceeded its discretion in granting a new trial based upon its first ground. In view of this disposition, we need not consider whether or not timely objection was made to the appellant's voir dire examination of the jury.

### INTERVENING FORCE—SUPERSEDING CAUSE

The court's second and third grounds for granting a new trial are based upon its conclusion that the evidence introduced in this case required the court as a matter of law to give the jury intervening force and superseding cause instructions, in addition to defendant-Cooper's Requested Instruction No. 16 [3] which was given. We disagree. It is our opinion that neither defendant-Cooper's Requested Instructions No. 15 nor No. 16 should be given, as a matter of law, because the evidence in this case does not justify instructions on intervening force-superseding cause.

The testimony of plaintiff-Santanello and defendant-Highfill concerning the event is set out in full at the beginning of this opinion. A brief summary recalls that defendant-Cooper's dog was loose, in violation of a city ordinance; that it ran in front of plaintiff-Santanello's car; that he slammed on his brakes to avoid hitting the dog and did stop; that he was almost immediately hit from the rear by defendant-Highfill.

---

\* \* \* \* \*

3. "I further instruct you that the act of a third person in committing an unlawful act may be the superseding cause of harm to another, and thus may be the 'proximate cause' of the accident as I have heretofore defined proximate cause to you.

"Therefore, if you find from the evidence that the injuries of which the plaintiff complains were proximately caused by the acts solely of another person and not by the defendant Vern Cooper by reason of his dog being loose on the street, then I instruct you that you must find for the defendant Vern Cooper."

\* \* \* \* \*

The law in Arizona involving intervening force-superseding cause is well established in the negative sense. We have numerous cases that describe the facts that do not constitute intervening force-superseding cause and a few that describe fact situations that constitute a superseding cause. See E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740; City of Phoenix v. Canfield, 97 Ariz. 316, 400 P.2d 115 (1965); MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958); Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417 (1941); Herzberg v. White, 49 Ariz. 313, 66 P.2d 253 (1937); Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937); City of Douglas v. Burden, 24 Ariz. 95, 206 P. 1085 (1922); Crandall v. Consolidated Tel., etc., Co., 14 Ariz. 322, 127 P. 994 (1912); Worthington v. Funk, 7 Ariz.App. 595, 442 P.2d 153 (1968); State v. Watson, 7 Ariz.App. 81, 436 P.2d 175 (1967); City of Phoenix v. Schroeder, 1 Ariz.App. 510, 516, 517, 405 P.2d 301 (1965).

■ The foregoing cases, and Herzberg in particular, teach us that it is only in the rare, unique, strange and *extraordinary* factual situation that an intervening-superseding cause instruction is ever appropriate. The facts in Cornum illustrate just how very *extraordinary* that a situation must be in order to justify such an instruction. In addition, "foreseeability" is the second roadblock to a trial court's giving such an instruction. If the event is foreseeable, intervening-superseding cause does not exist to excuse the first actor and no such instruction is proper. Finally, the original negligent act must come to rest and must have ceased its active operation in order to justify such instruction. Zelman v. Stauder, 11 Ariz.App. 547, 466 P.2d 766.

■ In the case which we are considering, the effects of both negligent acts were still active and continuing at the time of the accident—thus, as a matter of law, neither could even be considered as an intervening force, the *sine qua non* of superseding cause. Zelman v. Stauder, supra, and authorities cited therein. Here, appellee Cooper's dog, the plaintiff's truck, and the defendant Highfill's truck all came together in one active and substantially simultaneous point in time. Therefore we have the classic concurrent-cause personal injury case as a matter of law. 2 Restatement of Torts (Second) § 439, p. 464. Further, even if an intervening force could be postulated, the facts would not support a finding of superseding cause. It is certainly foreseeable that a vehicle would suddenly stop for a dog negligently allowed to dart into the roadway and that this first vehicle might be struck from the rear in the process. See 11 Defense L.R. 372 (1962), emergency stopping to avoid animals; 34 A.L.R.2d 1287–1292, §§ 3–7; 59 A.L.R.2d 1340, 1341, § 4; 4 Am.Jur.2d Animals, §§ 115, 116.

We therefore hold that the trial court exceeded its discretion in granting a new trial based upon the asserted second and third grounds.

### REQUESTED INSTRUCTION A.R.S. § 28–701, subsec. A

■ The trial court's third ground refers to A.R.S. § 28–701, subsec. A.[5] The court stated that it should have read the section to the jury. We disagree on three bases. First, we disagree for the reasons expressed above that this action is not an intervening force-superseding cause factual situation. Secondly, we disagree because the record does not reveal that excessive speed was an issue in this case. The trial court instruct-

---

5. Section 28–701, subsec. A, as amended, reads as follows:
"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

ed the jury from A.R.S. § 28–730, subsec. A which reads as follows:

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway."

This instruction, together with others which were given, sufficiently instructed the jury on the law. Lastly, we disagree for the reasons set forth in Newman v. Piazza, 6 Ariz.App. 396, 433 P.2d 47 (1967), where Division Two of this court held that it was not error for the trial court to refuse to instruct on A.R.S. § 28–701, where it had instructed on A.R.S. Section 28–730 and where little or no evidence existed in the record indicating excessive speed.

Here again the trial court has exercised its discretion beyond the course prescribed by the law and has therefore exceeded its discretionary limitations.

Having disposed of the specified grounds relied upon by the trial court in its order granting a new trial as constituting insufficient grounds for the granting of the order, the question arises as to whether this court can consider other grounds for a new trial urged by appellees in the trial court. The appellant urges that because of the failure of appellee to file a cross-appeal, these other grounds may not now be considered We disagree.

Boudreaux v. Edwards, 7 Ariz.App. 178, 437 P.2d 430 (1968), is a decision of Division One of this court which is squarely in agreement with appellant's contention, to-wit: that a cross-appeal is necessary. A slightly later decision of Division Two, Aegerter v. Duncan, 7 Ariz.App. 239, 437 P.2d 991 (1968), upholds the position of appellee. In that decision, the court held that the appellee (in the position of appellee herein) was not an "aggrieved party" under Rule 73(a), and thus had no standing to cross-appeal. The court in Aegerter stated:

"The order from which the plaintiffs seek to cross appeal is one completely in their favor. They were granted a new trial. They could not enlarge their rights thereunder so as to require a cross appeal. Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 289 P.2d 183 (1955). The fact the court may have stated the wrong reason for granting their motion is the sole complaint of the plaintiffs on appeal. That a court rules in favor of a party for wrong reasons does not give grounds for appeal. 4 C.J.S. Appeal & Error § 183, at 567; 4 Am.Jur.2d Appeal and Error § 185, at 695–96. Nor does the mere fact that an appeal has been filed by the aggrieved party give the prevailing party grounds to file a cross appeal. 4 C.J.S. Appeal & Error § 183, at 556.

"When the defendants appealed from the order granting the new trial, the plaintiffs could, by means of cross-assignments of error, defend or support the order for any reason appearing in the record, regardless of the reason given by the trial court. Rogers v. Mountain States Telephone & Telegraph Co., 100 Ariz. 154, at 166, 412 P.2d 272 (1966)." At page 243, 7 Ariz.App., 437 P.2d at 995.

This is in accord with the procedure held permissible in Rogers v. Mountain States Tel. & Tel., 100 Ariz. 154 at 166, 412 P.2d 272 (1966). The Aegerter view has been reconfirmed by a very recent Division Two decision, Wagner v. Coronet Hotel, 10 Ariz.App. 296, 458 P.2d 390 (1969).

Both Boudreaux and Aegerter rely upon the same Arizona cases, and particularly Maricopa County v. Corporation Commission, 79 Ariz. 307, at 310, 289 P.2d 183 (1955). In that case a distinction is drawn between an appellee who seeks to enlarge his rights (cross-appeal necessary) and one who merely seeks to support and affirm the order challenged by appellant (appeal unnecessary). It appears to this court that Aegerter and Wagner correctly follow the reasoning of Maricopa County v. Corporation Commission to the conclusion that a cross-appeal in a new trial situation is unnecessary, and that the raising of the ques-

tion in appellee's brief is the correct procedure under our present rules. Of course, under such circumstances we believe that under the principle stated in Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809 (1966) the burden would be upon the appellee to establish that such other grounds require, as a matter of law, the granting of a new trial. The view we take is in accord with the general principle which requires an appellate court to affirm the trial court when it makes a right decision for the wrong reason.

 Defendant-Cooper complained before the trial court and complains here that the leash law—Phoenix City Ordinance No. G–589—should not be treated as a negligence per se situation insofar as he is concerned. He does not complain of any procedural defect in its enactment. Assuming that the ordinance was properly enacted, procedurally, the primary question remaining concerns the city's authority to enact such legislation. Defendant argues that A.R.S. Section 9–240, subsec. B, par. 16 limits the authority of the city in this regard. Irrespective of the powers of a charter city such as Phoenix, as opposed to the powers of a city council form, the state legislature has enacted a specific animal control law which includes dogs. A.R.S. § 24–361 et seq. The Act includes a specific exemption and a grant of power to cities and towns, which reads:

> "The provisions of this article shall not apply to incorporated cities or towns that impose a license fee and vaccination on dogs by ordinance, provided that such ordinance is equal to or more stringent than the provisions of this article."
> (A.R.S. Section 24–376)

A review of Ordinance No. G–589 shows that it is more stringent than A.R.S. § 24–361 et seq. It is our opinion that the city had sufficient legal basis to enact its leash law ordinance. If the ordinance constitutes an authorized and valid exercise of the city's police powers, then it gives rise to a statutory duty from the breach of which liability may flow. Deering v. Car-

ter, 92 Ariz. 329, 376 P.2d 857 (1962). See Salt River Valley Water Users' Ass'n v. Compton, 39 Ariz. 491, 496, 8 P.2d 249, 251 (1932). At common law, the owner of a dog was not liable for injury occurring to third persons by reason of its running at large. 11 A.L.R.2d 270, 4 Am.Jur.2d, Animals, § 115. However, the common law rule is changed by a properly enacted dog-leash ordinance. Brotemarkle v. Snyder, 99 Cal.App.2d 388, 221 P.2d 992 (1950). The plaintiff contends, and the trial court agreed, that a violation of the Phoenix loose dog ordinance was negligence per se. Brand v. J. H. Rose Trucking Co., 102 Ariz. 201, 205, 427 P.2d 519 (1967). The defendant-Cooper contends that such an ordinance merely gives rise to a liability not known at common law and that plaintiff must still prove that the defendant-Cooper either intentionally or negligently violated the ordinance. Therefore, defendant-Cooper contends that the trial court erred in refusing to give his requested Instruction No. 26, which reads:

> "You are instructed that even if you find that defendant Vern Cooper violated the City Ordinance against allowing dogs to run at large, you must find that he did so either intentionally or negligently. In absence of such finding, your verdict must be for the defendant Vern Cooper."

 We agree with defendant-Cooper. Without approving this particular instruction, we are convinced that some such condition should be read into the city ordinance and the jury so instructed. The ordinance says that, "No person owning * * * a dog shall *allow* said dog to be at large." (Emphasis added.) The word "allow" means to approve of, sanction or permit, which involves a specific intent or negligent action. Webster's, 3rd New International, unabridged (1961 ed.). See Garcia v. Sumrall, 58 Ariz. 526, 121 P.2d 640 (1942), where "allow or permit" cattle to trespass, under A.R.S. § 24–344 (No Fence District), was held to require an overt and unlawful act on the part of the owner of the cattle. 34 A.L.R.2d 1289,

1290, § 4, entitled, Animals at Large—Owner's Liability; 4 Am.Jur.2d, Animals, § 116. It is our opinion that the trial court committed reversible error in instructing the jury that defendant-Cooper's liability was based upon the violation of the statute irrespective of his "allowing" his dog to run at large without proving either his intent to allow the dog to run loose or his negligence in that regard.

We therefore affirm the order for a new trial.

HAIRE and JACOBSON, JJ., concur.