542 P.2d 1102

**Morris A. STROUD and Marjorie Stroud, husband and wife, Appellants,**

v.

**DORR–OLIVER, INC., a Delaware Corporation, and E. L. Farmer Construction Company, Inc., an Arizona Corporation, Appellees and Appellants,**

v.

**ALLISON STEEL MANUFACTURING CO., a corporation, Appellee.**

No. 11735.

Supreme Court of Arizona, In Division.

Nov. 13, 1975.

Rehearing Denied Jan. 13, 1976, with Supplemental Opinion Jan. 16, 1976, see 544 P.2d 1089.

Langerman, Begam & Lewis, by Robert G. Begam, Samuel Langerman and William T. Keane, Phoenix, for appellants Stroud.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John H. Westover, Phoenix, for appellee and appellant Dorr-Oliver.

Maupin & Wilson, by Donald R. Wilson and William G. Fairbourn, Phoenix, for appellee and appellant E. L. Farmer.

Moore & Romley, by Kenneth J. Sherk and Roger T. Hargrove, Phoenix, for appellee Allison Steel.

Robert K. Park, Chief Counsel, by J. Victor Stoffa, Phoenix, for State Compensation Fund, amicus curiae.

CAMERON, Chief Justice.

Appellants, plaintiffs below, Morris A. Stroud and Marjorie Stroud, brought suit against the defendants below, Dorr-Oliver, Inc. and E. L. Farmer Construction Company, Inc., for industrial injuries sustained by Morris A. Stroud during construction of a sewage treatment plant for the City of Phoenix. From a defense verdict plaintiffs appeal, contending errors in the conduct of the trial.

Defendant Dorr-Oliver filed a third party complaint seeking indemnity from Allison Steel Manufacturing Company. E. L. Farmer Construction filed a cross-claim against Allison Steel for indemnity. Allison filed a motion for summary judgment which was denied. Allison then filed a petition for special action in the Court of Appeals, see *Allison Steel Manufacturing Co. v. Superior Court,* 20 Ariz.App. 185, 511 P.2d 198 (1973). As a result of that opinion, the trial court granted summary judgment in favor of Allison and against Farmer and Dorr-Oliver. From this summary judgment Dorr-Oliver and Farmer Construction appeal.

Allison Manufacturing Company filed an answering brief to the appeal of Farmer Construction Company and Dorr-Oliver, as well as a motion to dismiss.[1]

We must answer the following questions on appeal:

1. Do Dorr-Oliver, Inc. and E. L. Farmer Construction Company have a right of indemnity or contribution from Allison Steel Manufacturing Company?

---

1. All of these matters were filed in the Court of Appeals, but the consolidated file was transferred to this court pursuant to Rule 47(e) (5), Rules of the Supreme Court, 17A A.R.S.

2. Does Allison Steel have a lien on any judgment that Stroud might obtain against Dorr-Oliver or Farmer?

3. Did the trial court err in admitting into evidence certain photographs?

4. Did the trial court err in admitting certain evidence and testimony which tended to show fault on the part of Allison Steel Manufacturing Company and in giving the following:

   a. instruction on proximate and intervening cause,

   b. instruction on strict liability,

   c. special interrogatories to the jury.

5. Did the court err in admitting evidence of the second successful erection of the dome?

6. Did the trial court err in admitting portions of E. L. Farmer's deposition which contained statements from an investigative report not in evidence?

7. Did the defense counsel commit reversible error in inferring the existence of workmen's compensation as a remedy for the plaintiff?

The facts necessary for a determination of this matter on appeal are as follows. The City of Phoenix awarded a contract to build a sewage treatment plant to E. L. Farmer Construction Company. Farmer subcontracted with Dorr-Oliver, Inc., to design and fabricate the metal parts of the top of a gas digester unit. Farmer then subcontracted with Allison Steel Company to do the actual erection of the unit. The gas digester unit consisted of a cylindrical concrete building approximately 45 feet high and 100 feet in diameter. It was topped by a domed metal cap which looked somewhat like an opened umbrella resting on top of the concrete cylinder. A metal tension ring was at the bottom of the cap while a compression ring, about 12 feet in diameter, was at the top. Heavy metal arms spaced every ten degrees were connected at the bottom to the large ring and at the top to the smaller one. There was

considerable dispute as to whose errors and mistakes led to the accident. Dorr-Oliver and Farmer contend that Allison, by negligently placing the compression ring upside down on the top of the unit, caused the cap to fall. Allison as well as plaintiffs contends that the plans and specifications given to Allison by Farmer and Dorr-Oliver were not the final and corrected plans, but were preliminary shop drawings for the purpose of bidding only and that the defective plans thus caused Allison to place the compression ring on the structure upside down. It is also contended that the compression ring was not adequately marked. The metal tension ring was almost 100 feet in diameter and metal gusset plates were welded to the ring at 10 degree intervals. There is some testimony that because the compression ring was placed upside down, the metal beams would not fit and the gusset plates on the compression ring were partially cut to allow proper fit.

There is no denying that while under construction the parts of the cap came crashing down and Morris Stroud, an employee of Allison, was severely injured. Stroud recovered from his employer, Allison, under workmen's compensation, and brought suit against Farmer and Dorr-Oliver. The jury found for the defendants Farmer and Dorr-Oliver.

## RIGHT OF INDEMNITY

Dorr-Oliver filed a third party complaint against Allison seeking indemnity from Allison for any judgment that might be entered against it in the Stroud litigation. Farmer sought indemnity from Allison by way of a cross-claim. Allison filed a motion for summary judgment, both as to the third party complaint of Dorr-Oliver and as to the cross-claim of Farmer. This motion was denied by the trial court and Allison took a petition for special action to the Court of Appeals which, on 26 June 1973, decided in favor of Allison stating, first as to Dorr-Oliver:

"The liability of Dorr-Oliver to Stroud was based upon its alleged negligence in

designing the cover, improper preparation of specifications for installation of the cover and improper fabrication of the steel. In turn, Dorr-Oliver's claim of indemnity against Allison was based upon Allison's alleged negligence in failing to follow drawings and plans prepared by Dorr-Oliver and the negligent installation and erection of the structure. In addition to the complete indemnity sought by Dorr-Oliver against Allison, Dorr-Oliver also sought contribution. In summary then, Dorr-Oliver's liability to Stroud turns upon its alleged active negligence in causing Stroud's injuries, and there is no relationship existing, either contractual or arising as a matter of law, between Dorr-Oliver and Allison, which would impose liability upon Dorr-Oliver to Stroud for Allison's negligent acts alone." *Allison Steel Manufacturing Co. v. Superior Court*, supra, 20 Ariz.App. at 188–189, 511 P.2d at 201–202.

The Court of Appeals then held that the facts do not support liability by Allison on the basis of the "active negligence-passive negligence" doctrine of *Busy Bee Buffet v. Ferrell*, 82 Ariz. 192, 310 P.2d 817 (1957); *Transcon Lines v. Barnes*, 17 Ariz.App. 428, 498 P.2d 502 (1972).

■ But Dorr-Oliver contends that Allison's negligence was so gross that Allison should be compelled to indemnify Dorr-Oliver pursuant to the Restatement of Restitution, § 97. We believe the Court of Appeals correctly answered this contention as follows:

"Dorr-Oliver contends, however, that the rule against indemnity or contribution among joint tortfeasors is not applicable in the situation where one joint tortfeasor was grossly negligent, citing Restatement of Restitution, § 97. In this regard, the negligence alleged by Dorr-Oliver against Allison was twofold, first that Allison was using shop drawings rather than completed plans for the installation of the compressor ring and

that they should have known that the shop drawings were not the final specifications for this job. Secondly, Dorr-Oliver contends that if Allison had not been negligent and had read the shop plans correctly, it would not have installed the compression ring holding the cover upside down. While Dorr-Oliver classifies these alleged acts of negligence as gross, they do not, in our opinion, reach the standard set in § 97, Restatement of Restitution, which requires that the conduct be 'reckless or intentionally wrongful' to enable a negligent tortfeasor to obtain the indemnity from a concurrent tortfeasor." *Allison Steel Manufacturing Co. v. Superior Court*, supra, 20 Ariz.App. at 189, 511 P.2d at 202.

As to Farmer, the Court of Appeals stated:

"Farmer's cross-claim against Allison was in two counts. The second count sought indemnity from Allison based upon the allegation that it was Allison and not Farmer who was actively and primarily negligent. Farmer did not allege any vicarious liability by reason of Allison's acts. However, the complaint against Farmer by Stroud contended that Farmer was negligent in improperly supervising the work and failing to design and install adequate safety devices. These allegations, if true, would impose liability upon Farmer for its 'active participation in the liability creating event' and what we have stated concerning Dorr-Oliver's claim of indemnity against Allison would be equally applicable to Farmer's claim." *Allison Steel Manufacturing Co. v. Superior Court*, supra, 20 Ariz.App. at 190, 511 P.2d at 203.

■ The Court of Appeals also noted that there was a contract of indemnification between Allison and Farmer, but the Court of Appeals correctly noted that this did not give Farmer the right to indemnification for Farmer's negligence. *Royal Properties, Inc. v. Arizona Title Ins. and*

*Trust Co.,* 13 Ariz.App. 376, 476 P.2d 897 (1970).

The Court of Appeals then reaffirmed its previous order directing the trial court to dismiss the third party complaint of Dorr-Oliver and the cross-complaint of Farmer. Rehearing was denied by the Court of Appeals 6 August 1973 and this court denied review on 2 October 1973.

The matters are before us on appeal. After reviewing the complete record, we do not perceive any reason why we should deviate from the decision of the Court of Appeals in *Allison v. Superior Court,* supra. The defendants Dorr-Oliver and Farmer are charged by plaintiffs with separate active negligence which allegedly caused the complained of injuries. Allison is at most a joint tortfeasor and Dorr-Oliver and Farmer are not entitled to contribution or indemnity from Allison.

The order of the trial court in dismissing the third party complaint of Dorr-Oliver and the cross-claim of Farmer is affirmed. The motion of Allison Steel in this court to dismiss is thereby rendered moot.

## DOES ALLISON STEEL HAVE A LIEN ON STROUD'S JUDGMENT?

■ Our statute, A.R.S. § 23–1023, provides that an injured workman may take the benefits of workmen's compensation from his employer or his insurance carrier and still pursue his remedy against negligent third parties. Section C of A.R.S. § 23–1023 reads in part as follows:

"C. If he proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectible from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. * * *"

The law in Arizona in this regard has been succinctly stated by the Court of Appeals as follows:

"In summary then, the present Arizona legislation:

(1) Allows the injured party to receive from the compensation carrier the amounts applicable under the workmen's compensation laws;

(2) Allows the injured party at the same time to maintain an action against the alleged third party tortfeasor for the full measure of the damages suffered;

(3) Allows the compensation carrier a lien on the amount of the injured party's recovery or settlement to the extent of the amount paid by the compensation carrier under the provisions of the workmen's compensation law; and,

(4) Allows the compensation carrier, if suit is not brought by the injured party in one year, to maintain an action against the alleged third party tortfeasor for an amount not to exceed those sums paid or to be paid in the future to the injured party."

*Henshaw v. Mays,* 20 Ariz.App. 300, 305–306, 512 P.2d 604, 609–610 (1973).

Appellants Dorr-Oliver and Farmer would have us hold as do a minority of states that where the employer is negligent then he or his workmen's compensation carrier is not entitled to a lien as to any judgment received by the injured workman but that the recovery of the workman against the negligent third parties would be reduced by the value of benefits he has already received under workmen's compensation. Appellants cite the case of *Witt v. Jackson,* 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961) for this proposition. In *Witt v. Jackson,* supra, an on-duty policeman Witt in his automobile was tail-ended by Jackson's car. Officer Witt received benefits from the City of Los Angeles' workmen's compensation insurer. When Officer Witt sued Jackson, the city inter-

vened in order to obtain a lien on any judgment against Jackson. At trial it was brought out that both Witt and Jackson were negligent in the operation of their vehicles. Officer Witt's contributory negligence was attributed to his employer, the City of Los Angeles. Jackson contended that since Los Angeles was contributorily negligent the city should be prevented from obtaining a lien on the judgment. The California Supreme Court per Justice Traynor concurred with Jackson. The primary rationale for the California decision denying a lien to the employer is that one should not be allowed to take advantage of his own wrong. Justice Traynor also stated as to the injured workman:

> " * * * A negligent employer should be in no better position when, as here, the third party tortfeasor does not seek indemnity; to allow the employer reimbursement in either case would allow him to profit from his own wrong. Since, however, the injured employee may not be allowed double recovery, his damages must be reduced by the amount of workmen's compensation he received." *Witt v. Jackson*, supra, 57 Cal.2d at 73, 17 Cal.Rptr. at 378, 366 P.2d at 650.

Under this interpretation, any recovery against Dorr-Oliver and Farmer would be reduced by the amount already paid under Allison's workmen's compensation policy. This approach would reduce the amount Dorr-Oliver and Farmer would have to pay to Stroud and would be an amount that Allison would not receive as reimbursement. While this may not be called contribution, the net effect is the same and we have long held that there is no contribution among joint tortfeasors. *Blakely Oil v. Crowder*, 80 Ariz. 72, 292 P.2d 842 (1956).

The holding in *Witt*, supra, is a minority position represented by only three jurisdictions: California, *Witt v. Jackson*, supra; North Carolina, *Brown v. Southern Ry. Co.*, 204 N.C. 668, 169 S.E. 419 (1933), *Poindexter v. Johnson Motor Lines*, 235 N.C. 286, 69 S.E.2d 495 (1952); and Pennsylvania, *Maio v. Fahs*, 339 Pa. 180, 14 A. 2d 105 (1940). The majority position is represented by 22 states and Arizona.

There is no persuasive reason why we should adopt the minority position. There is no provision in A.R.S. § 23–1023(C) to deny an employer a lien even if the employer was contributorily negligent. The right of an employer, or its workmen's compensation carrier, to enforce its lien under A.R.S. § 23–1023(C) against any judgment recovered by an employee in a third party action is not dependent on the employer's freedom from concurrent negligence contributing to the injury and the third party cannot assert such negligence as a defense or ask for indemnification from said employer or his carrier.

We agree with the Georgia court which, in construing a similar statute, stated:

> " * * * Workmen's compensation liability arises out of a contract created by law and not out of any theory of tort, and such liability is not concerned with any negligence of the employer or the employee. * * * Compensation paid under the Act is not a settlement of a tort claim * * * and the legal effect of this fact is to completely eliminate the idea that the employer can be a common law tortfeasor as to the employee. Therefore, there is no basis upon which the employer can be a joint tortfeasor with a third person as to any employee where both employer and employee are under the Act.
>
> "It is true that * * * an employer may escape liability for its negligence where such negligence combines with that of another to produce an injury upon an employee of the employer, and would force the third party to pay damages for injuries which were caused not by his negligence alone, but this is one of the benefits that is granted to an employer coming under the Act and compensates for the many instances where the employer must pay compensation for an injury for which he would not have been liable at common law." *Williams*

*Bros. Lumber Co. v. Meisel*, 85 Ga.App. 72, 74–75, 68 S.E.2d 384, 388 (1951).

## INTRODUCTION OF PHOTOGRAPHS

■ The first objection made by appellant Stroud is to the introduction of certain photographs. Some of the photographs admitted were taken by an engineer who was not present in court to testify and others were among many pictures taken by the designer of the collapsed metal structure. The witness had some difficulty in identifying the photographs.

Appellant first contends that there was no foundation for a proper identification of the photographs. The following pretrial stipulation, however, was agreed to by the parties as follows:

"The parties have permitted everyone to examine a large number of pictures taken by various people at various times. In some instances it is not even known who took the pictures. The parties do agree that any of these pictures which show the structures in question either before the accident occurred or which show the structure or some part of it after the accident occurred may be introduced in evidence without the necessity of bringing the various photographers. The parties do not waive any other objections concerning the competency, relevancy, materiality, clarity of such pictures nor do they waive any objection concerning possible changes in the conditions depicted from the situation which may have prevailed immediately following the accident."

But Stroud further contends that the pictures did not accurately portray the corners of the gusset plates of the compression ring and therefore should not have been admitted. There was testimony that in putting on the roof there had been difficulty because the compression ring was upside down. The holes in the gusset plates and the rafter would not align. The workmen had to use sledge hammers, wedges and com-a-longs. This forced the ring to rotate and resulted in the accident. Expert testimony indicated that the gusset plate corners had been cut off with a torch contrary to the terms of the contract and contrary to good erection practices. We believe the pictures were admissible to show that some of the gusset plates were cut away at the corners:

"* * * The trial judge's 'considerable discretion' exists with respect to (1) the picture's accuracy in portraying the object photographed, and (2) the practical utility of the photograph to the jury." *Higgins v. Arizona Savings and Loan Assoc.*, 90 Ariz. 55, 66, 365 P.2d 476, 484 (1961).

The photographs were properly admitted into evidence.

## EVIDENCE OF ALLISON'S NEGLIGENCE

As part of Dorr-Oliver's and Farmer's defense, they attempted to show that it was Allison's sole negligence or superseding intervening negligence which caused the accident.

The Strouds contend that the jurors were confused in that the court instructed the jury concerning Allison's negligence without making it clear that the jury could find Allison negligent and still find for the plaintiff against the defendants Dorr-Oliver and Farmer.

■ It is, of course, a proper defense in a negligence action to show that the injury was the result of the superseding intervening negligence of a third party, *City of Phoenix v. Schroeder*, 1 Ariz.App. 510, 405 P.2d 301 (1965), and, of course, evidence to support the claim that the third party's negligence was the sole cause of the accident is also admissible. Viewing the evidence on the issue of negligence in a light most favorable to the party who prevailed in the trial court, *Sax v. Kopelman*, 96 Ariz. 394, 396 P.2d 17 (1964), we find no error generally in allowing the defendants to attempt to place the blame on Allison. With this in mind, we will consider Stroud's objection to certain evidence admitted during trial.

### a. *Jury Instructions*

■ Appellant Stroud complains of instructions to the jury on matters of proximate cause and intervening force (or cause). The judge's instruction on proximate cause complied with our definition in *Pacht v. Morris*, 107 Ariz. 392, 489 P.2d 29 (1971), which is also MARJI No. 9 (revised) with some further elaboration. It was correct.

Regarding the matter of intervening cause, the instruction was:

"Where the intervening cause is set in operation by the original negligence, such negligence is still the proximate cause, where the circumstances are such that the injurious consequences might have been foreseen as likely to result from the first negligent act or omission.

"When the act of a third person intervenes, which is not a consequence of the first wrongful act or omission, and which could not have been foreseen by the exercise of reasonable diligence, and without which the injurious consequences could not have happened, the first act or omission is not the proximate cause of the injury.

"The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and, if so, the connection is not broken; but if the act of the third person, which is the immediate cause of the injury is such that in the exercise of reasonable diligence would not be anticipated, and the third person is not under the control of the one guilty of the first act or omission, the connection is broken, and the first act or omission is not the proximate cause of the injury."

■ Our Court of Appeals has stated: "An intervening cause (force or act) is an independent cause which steps between the original wrongful act or omission of the defendant and the injury to the plaintiff, alters the natural and normal sequence of events and produces a result which would have not otherwise occurred. Not all intervening causes are superseding causes. A superseding cause is an intervening cause which by its nature becomes the proximate cause of the injury and relieves the defendant of any liability for said injury.

"For an intervening cause to be a superseding cause it must be a cause which could not have been reasonably foreseen or anticipated by the defendant. Stated differently, in order for an intervening cause to supersede the original negligence, the intervening cause must be so extraordinary that the defendant could not have reasonably anticipated that the cause would intervene. (citations omitted)" *City of Phoenix v. Schroeder*, supra, 1 Ariz.App. at 516–517, 405 P.2d at 307–308.[2]

Assuming for the purpose of argument that Dorr-Oliver and Farmer were negligent, could they have reasonably anticipated that Allison would have tried to erect the covering with the compression ring upside down? We think not. We believe that Allison's conduct is the type of extraordinary conduct from which a jury could find that it was a superseding cause. *City of Phoenix v. Schroeder*, supra; see also *Herzberg v. White*, 49 Ariz. 313, 66 P.2d 253 (1937).

We find no error in these instructions.

### b. *Instruction on Strict Liability (No. 18)*

■ The defendant Dorr-Oliver was not only the designer but the fabricator, i. e.,

---

2. Stroud cites from another Court of Appeals opinion, however, in support of his position, *Santanello v. Cooper*, 12 Ariz.App. 123, 468 P.2d 390 (1970). That case has been vacated by this court. See *Santanello v. Cooper*, 106 Ariz. 262, 475 P.2d 246 (1970). Once an opinion of the Court of Appeals has been vacated by this court, it is of no force and effect and is not authority.

manufacturer, of the steel. There was evidence that the plaintiff Stroud did not look at first to ascertain whether the compression ring was upside down or not, but that after welding the two halves together he noted that the compression ring was upside down and on two occasions reported this fact to his superintendent.

When settling the instructions, the trial court indicated it did not intend to give an instruction on assumption of risk. He approved and gave the following instruction over Stroud's objection:

"Even under the strict liability theory, sellers of products are not liable to a user for physical injury under the following circumstances:

"(1) If the user becomes aware of the defect and purposely endeavors to make use of the product in its defective condition, the product is not 'unreasonably dangerous' unless the condition which caused the injury was dangerous to an extent beyond that which would be contemplated by an ordinarily prudent user with ordinary knowledge commonly possessed by such users generally.

"(2) If the manufactured product is not used for the purpose or in the manner it was intended to be used or which the manufacturer in the exercise of reasonable prudence should foresee that it would be so used.

"(3) If the injury to the user was not proximately caused by the defective condition."

We have stated:

"We now reach the question of whether contributory negligence forms a defense under products liability. There appear to us to be at least three separate divisions of what is loosely termed 'contributory negligence' by some courts (footnote omitted) in products liability cases. These are: (1) failure to discover a defect in the product which the plaintiff should, if he was reasonably diligent, have discovered; (2) notwithstanding the discovery of such a defect, the plain-

tiff nevertheless uses the article; and (3) the plaintiff uses the product for certain purposes or in a manner not reasonably foreseen by the manufacturer. Using classical definitions, it becomes readily apparent that category number one is contributory negligence and category number two is assumption of risk. Category number three falls under what could be called the doctrine of 'unanticipated use' or 'misuse'. Epstein, Products Liability: Defenses Based on Plaintiff's Conduct, 1968 Utah Law Review 267, 268–270 (May, 1968)." *O. S. Stapley Company v. Miller*, 103 Ariz. 556, 560–561, 447 P.2d 248, 252–253 (1968).

We believe that the facts in this case could support an instruction on assumption of risk and that it would not have been error to give that instruction. Also paragraph number one appears to be an instruction on assumption of risk and paragraph two on unanticipated use or misuse. Both paragraphs are supported by the evidence.

We find no error.

c. *Special Interrogatories*

Rule 49(h) of our Rules of Civil Procedure, 16 A.R.S., allows a trial court to submit written interrogatories to a jury together with explanations or instructions which may be necessary for the jury to make answers thereto and to also render a general verdict. Over objections by appellant Stroud the following interrogatories were given:

"1. If you should find in favor of plaintiffs [injured workman] and against Dorr-Oliver, is your verdict based on negligence, or strict liability theory, or both?

[No answer]

\*   \*   \*   \*   \*   \*

"2. Was Allison Steel Manufacturing Company guilty of negligence? Answer yes or no.

ANSWER: Yes.

\*   \*   \*   \*   \*   \*

"3. If you answer No. 2 'yes', was such negligence a proximate cause of plaintiffs' injuries? Answer yes or no.

ANSWER: Yes."

The jury found for the defendant and did not answer Interrogatory No. 1. We find no error in Interrogatory No. 1.

In light of our holding herein, that there is no right of contribution or indemnity by Allison unless Allison was the sole cause or superseding intervening cause, Instructions 2 and 3 standing alone could have been confusing to the jury. However, any confusion that might have arisen by submitting these interrogatories was, we believe, cured by the following instruction:

"When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly conducted conduct, contribute concurrently and as proximate causes to the injury of another, each of such persons is liable, regardless of the relative degree of contribution.

"It is no defense for a defendant, whose negligence has been one of the proximate causes of the injury, to assert that some other person not joined as a defendant in this action, or some other defendant, also participated in causing the injury. This would be true even if it should appear to you that the negligence of that other person, or that other defendant, was greater in either its wrongful nature or its effect."

From a reading of the instructions as a whole, the jury was still properly instructed as to the negligence of Dorr-Oliver and Farmer and could have found against them under the facts of the case and the instructions given and still answered interrogatories in the same manner. We do not find any error to be prejudicial.

## EVIDENCE OF SUCCESSFUL COMPLETION OF PROJECT

During the first erection the dome had been held up by a crane which was removed prior to the accident. At the trial an ironworker, who worked on both the first and second erections of the dome, was called to testify by Stroud. On cross-examination by the attorney for Farmer's, the following transpired:

"Q Okay. Now, you helped take the whole thing down after the accident, right?

* * * * * *

"A I helped take it down, yes.

"Q And you also helped erect it the second time?

"A Yes.

"Q And when you erected it, the second time—strike that. You have already testified that, to the best of your knowledge, the plates, gusset plates on the first ring, the one that fell, were at ninety degrees, right?

"A Yes.

"Q And the one you erected the second time was at ninety degrees, right?

"A I don't really remember.

"Q All right. Assume for the purpose of this question it was. When you erected it the second time at ninety degrees, what drawings did you have; the same ones you had before?

"A The same drawings.

"Q So you believe then that you had this type of a drawing?

"A Yes.

"Q When you put it up the second time?

"A Yes.

"Q And do you believe or do you know whether you were working with a ninety degree gusset plate?

"A I don't even remember looking at the gusset plate the second time.

"Q When you put it up?

"A Yes.

"Q And that was because you used a tower when you put it up the second time; correct?

"A We used the false tower, if that's what you're talking about.

"Q What is that?

"A Oh, it was a support for the compression ring.

"Q And did you leave it up until the job was completed, or at least that part of the erection was completed?

"A Till it was completed.

"Q And every thing was stabilized?

"A Yes.

\*    \*    \*    \*    \*    \*

REDIRECT EXAMINATION

"BY MR. LANGERMAN:

"Q Mr. Talamantes, when you worked on the second erection, was Mr. Richardson again the foreman?

"A Yes.

"Q He just told you what to do and you did it?

"A Yes.

"Q Is it true that when the second ring was put in, it was put up in the reverse position; it was put in upside down when it was put up the first time; is that correct?

"A It was put in opposite from the first ring.

" And that was because Mr. Richardson told you to put it in that way?

"A Yes.

"Q At that time it was known to all of you, was it not, that the first ring had been put in upside down?

"A Yes."

On appeal attorney for the appellant states:

"Over vigorous objection the trial court admitted evidence relating to the erection of a compression ring replacing the one which failed in the accident."

We have reviewed the record and we find no vigorous objection and in fact we find no objection at all.

Even assuming that the evidence of the second erection was not within the exception to the general rule, that evidence of repair or a second successful construction is not admissible to prove negligence of the original construction, see *Daggett v. Atchison, T. & S. F. Ry. Co.,* 48 Cal.2d 655, 313 P.2d 557, 64 A.L.R.2d 1283 (1957) and Annotation at 1296; *Slow Development Co. v. Coulter,* 88 Ariz. 122, 353 P.2d 890 (1960), we believe the plaintiff Stroud waived the right to bring this matter on appeal by failing to object in the trial court. Not only did Stroud not object when the question of the second successful erection arose, but his attorney further questioned the witness on redirect concerning this subject. We find no error.

DEPOSITION OF E. L. FARMER

At the trial portions of the deposition of E. L. Farmer were read to the jury. The reading of the deposition itself was not objected to, but certain comments by Mr. Farmer in the deposition about an investigative report not in evidence were objected to by the attorney for Stroud, and failure to sustain these objections is assigned as error on appeal.

For example, at the trial the following was read from Mr. Farmer's deposition:

" 'Question: Mr. Farmer, you employed Mr. Deatherage, did you not, to make an investigation?

'ANSWER: Yes, sir.'

\*    \*    \*    \*    \*    \*

"MR. WESTOVER: Page 31, lines 12 to 23.

'Question: Mr. Deatherage says on page 11 of his report that he reviewed six Dorr-Oliver erection and fabrication shop drawings, and he says further:

' "No erection instructions are included, and it should be noted that with the exception of the previously referenced error in erection bolt size the 'as built' elements were found to conform

substantially to the applicable fabrication and erection drawings."

'Now, did your investigation lead you to believe anything different than that?

'Answer: No, sir.'

\*　\*　\*　\*　\*　\*

"MR. WESTOVER: Page 37, lines 4 through 13:

'Question: Based upon the best of your recollection I would like to know whether or not you agree with this statement by Mr. Deatherage. "It should also be noted that after the erection of the first rafter it should have been apparent that the dome cap plate could not be installed in the intended manner."

'Answer: Yes, sir.

'Question: You agree with that statement?

'Answer: Yes, sir' ."

This testimony was objected to and the trial court stated:

"The fact that part of the report of another man is stated in the question, the jury should know that that is not evidence in the case. It is merely part of the question. Go ahead."

■ Once a deposition is admitted the rules of evidence will be applied as if the witness were then present and testifying. 8 Wright and Miller, Federal Practice and Procedure, § 2143, page 452; Rule 32(a), Rules of Civil Procedure, 16 A.R.S. In the instant case, E. L. Farmer, as the President of E. L. Farmer Construction Company, was an adverse party as to Dorr-Oliver and subject to cross-examination. If he had been testifying in person we believe it would have been error to try and impeach him with this report not in evidence and which was not a known treatise by a recognized authority. The cautionary instruction was not adequate. As to the plaintiff Stroud it would appear, considering the testimony, that the report was adverse to Allison, Dorr-Oliver, the party presenting the testimony, and Farmer. With the exception of showing that Allison was negligent, it was not damaging to Stroud.

"The court was in error in permitting the use of reports by the fire marshal in the cross-examination of the plaintiff's expert witness on the matter of the condition of the theater. The witness, however, disagreed in substantial respects with the statements in the reports shown to him on cross-examination. These statements were purportedly used to affect his credibility. If he denied them, they could have no probative value whatsoever. (citations omitted) The plaintiff has failed to show that the error was harmful. \* \* \*" *Taft Realty Corp. v. Yorkhaven Enterprises, Inc.*, 146 Conn. 338, 344, 150 A.2d 597, 600 (1959).

We find no prejudice to Stroud.

## REFERENCE TO WORKMEN'S COMPENSATION

■ Prior to trial the Superior Court granted a motion by appellant Stroud which excluded from the proceedings any reference to the fact that Stroud had received benefits under workmen's compensation. In his opening statement before trial the attorney for Dorr-Oliver stated that his client's position would be that:

"\* \* \* Mr. Stroud's injuries and damages were caused by the overwhelming gross negligence of his employer, Allison Steel, and that he should be left to the remedy against Allison Steel, his employer."

There was an immediate objection by Stroud's attorney. In his summation to the jury Dorr-Oliver's attorney stated:

"Those are things you have to consider in determining whether or not Allison's conduct is an efficient intervening cause, and if it is, then, as I told you in the opening statement, Mr. Stroud must be left to his remedy against his employer."

**416**

While we do not favor this type of "linemanship" on the part of counsel, we do not find that this remark necessarily infers that Stroud recovered under workmen's compensation. As we said once under similar circumstances, "It is too speculative." *Layton v. Rocha,* 90 Ariz. 369, 372, 368 P.2d 444, 446 (1962). The reference is not necessarily one to the forbidden topic of workmen's compensation, but rather a statement that Allison was negligent and not Dorr-Oliver.

Judgments affirmed.

STRUCKMEYER, V. C. J., and HOLO-HAN, J., concurring.